JAY P. HITT *v.* EDWIN M. TERRY ET AL.

[46 South., 829.]

1. WILLS. *Patient devising to physician. Relatives excluded. Presumption. Public policy.*

A will, on grounds of public policy, will be presumed to be void if made by a patient in favor of his physician, to the exclusion of relatives to whom ordinarily his property would go, in the absence of any showing of reason for the exclusion.

2. SAME. *Contest. Instructions.*

Instructions must be construed as a whole and the law deduced from all of them on the point in question, therefore:

(*a*) The error of a contestant's instruction in the contest of a will that testator must have been "wholly influenced," in making the will, is cured by another instruction that to set aside the will testator must have been "unduly influenced;" and

(*b*) A slight error in the statement of the law in a contestant's instruction is cured by a correct and emphatic instruction for proponent on the same subject.

3. SAME. *Immaterial instructions will not warrant reversal.*

Where the issues on the contest of a will were whether testator was of sound and disposing mind, and whether he was unduly influenced by the principal beneficiary, and the evidence was full and conclusive on both issues, instructions as to presumptions and burden of proof are immaterial.

4. SAME. *Insanity. Lucid intervals.*

An instruction that the law does not require contestant to prove that testator was insane at the time of the execution of the will is not subject to the objection that it excludes the idea that the will would be valid if made during a lucid interval.

5. SAME. *Evidence. Burden of proof.*

A contestant's instruction requiring proponent to prove by "a clear preponderance of the evidence" that testator, at the time he signed the will, knew the contents thereof, does not require the reversal of a decree against the validity of the will.

**6.** SAME. *Instructions. Same by both parties.*

   A party cannot predicate error of an instruction given his adversary
      where one given at his request propounded the same legal propo-
      sition.

**7.** SAME. *Unnaturalness of will.*

   On a contest of a will the jury may consider the unnaturalness of
      the instrument in connection with the testimony touching the
      relation of the parties and the state of feeling between the tes-
      tator and his relatives.

FROM the chancery court of Tunica county.

HON. PERCY BELL, Chancellor.

Hitt, appellant, propounded for probate what purported to be
the will of one R. W. Terry, deceased; and Edwin M. Terry and
others, appellees, and next of kin of the decedent, filed a caveat
and contested.   On an issue *devisavit vel non* the jury found in
favor of the contestants.   From a decree on the verdict adjudg-
ing the alleged will invalid, Hitt appealed to the supreme court.
The opinion of the court sufficiently states the facts.   All of the
instructions are set out in full in this report by order of the
court.

The chancery court gave the following instructions for Hitt,
the proponent:

"No. 2. The court instructs the jury, for the proponent, that,
in order to constitute a valid and legal execution of the last will
and testament of a testator, it is necessary that the same shall
be subscribed by him in the presence of two or more credible
witnesses, and by the said two witnesses subscribed as witnesses
in the presence of the said testator and of each other; and the
jury are instructed that the instrument of writing presented
in this cause for probate by the proponent has been duly and
legally executed in the manner above mentioned, and upon this
issue the jury will find for the proponent."

"No. 3. The court instructs the jury, for the proponent, that
while it is true that the burden of proving that the alleged testa-
tor, R. W. Terry, deceased, was of sound, disposing mind, mem-
ory, and understanding at the time of the making and executing

of the instrument of writing presented for probate herein, is on the proponent, yet the law presumes that every man is sane until the contrary appears by evidence, and, upon this legal presumption of sanity, the proponent has the right to rest, until it is overcome by some evidence showing the insanity of the alleged testator at the time of the alleged making and execution of the said instrument of writing."

"No. 4. The court instructs the jury, for the proponent, that, before they can find a verdict for the contestants in this cause, they must believe from the evidence that either one of two facts is true: Either that the alleged testator, R. W. Terry, was at the time of the making and executing of the said alleged last will and testament of unsound mind to that degree that he was incapable of understanding the alleged will, and did not understand it; or that he was influenced unduly by the proponent, J. P. Hitt, to make the said will, and this undue influence must have been so strong as to make the will not the will of the said R. W. Terry, but in fact the will of the said J. P. Hitt, forced upon the mind of said R. W. Terry by the preponderating and undue influence of the said J. P. Hitt."

"No. 5. The court instructs the jury, for the proponent, that, even though they may believe from the evidence that there were times in the life of the alleged testator when, from bad health or otherwise, his mind was unbalanced to that degree that he was incapable of understanding and attending to business, still, unless the jury believe from the evidence, further, that the unsoundness of mind of the testator existed at the time of the making of the said alleged last will and testament, and to that degree that he was incapable of understanding and did not understand the same, then the jury will find for the proponent upon the issue of insanity."

"No. 6. The court instructs the jury, for the proponent, that if they believe from the evidence that the testator, R. W. Terry, on the 19th day of March, 1906, at the office of the Peabody Hotel in the city of Memphis, Tenn., did sign the instrument of

writing presented for probate herein as his last will and testament, in the presence of E. P. Mangum, L. E. Heath, and C. R. Pollard, or any two of the said persons, knowing the same to be his last will and testament and understanding the same, and that then and there, immediately after the signing of the said last will and testament by said R. W. Terry, the said subscribing witnesses, or any two of them, who were present at the signing of the said instrument of writing by the said R. W. Terry, at his request, either directly made or through some other person, subscribed their names thereto as subscribing witnesses, in the presence of the said testator and of each other, and if the jury further believe from the evidence that at the time the said R. W. Terry, though in feeble health, was of mind and memory sufficiently sound to know and understand the provisions of the said alleged will, and did know and understand the same, and that the said R. W. Terry was not influenced by the proponent, J. P. Hitt, in any undue manner to execute the said alleged will, then the jury will find for the proponent, J. P. Hitt."

"No. 8. The court instructs the jury, for the proponent, that, while the burden of proof in this cause is on the proponent, this does not mean that the proponent must prove his case beyond a reasonable doubt. All that is required of him is to make out his case to the satisfaction of the jury by a preponderance of the evidence."

"No. 10. The court instructs the jury, for the proponent, that on the issue of insanity of the alleged testator the question for them to determine is, what was the condition of the mind of the alleged testator at the time of the making and executing of the instrument of writing presented for probate herein? And while it is true that the jury may take into consideration, on this issue, the condition of the alleged testator's mind at other times, yet the nearer to the time of the alleged execution of the said alleged will that the witnesses observed the said alleged testator the more important is the testimony on the said issue; and even

though the jury may believe from the evidence that there were times when the said R. W. Terry was not of sound, disposing mind, memory, and understanding, if they believe further from the evidence that he was, at the time of the making and executing of the said alleged will, of sound, disposing mind, memory, and understanding, they will find for the proponent on the issue of alleged insanity."

"No. 11. The court instructs the jury, for the proponent, that even though it may appear to them from the evidence that the alleged last will and testament of the said R. W. Terry, deceased, is unreasonable, unnatural, and unjust to his family, or some of them, or however unreasonable, unnatural, or unjust they may think the will to be, still they must uphold the will, if notwithstanding they believe from the evidence that the said R. W. Terry had testamentary capacity and was not unduly influenced at the time of the execution of the will."

"No. 12. The court instructs the jury, for the proponent, that although they may believe from the evidence that the alleged testator, R. W. Terry, was not prompted by natural affections when he made the alleged will, and although they may think its provisions are grossly unjust, still, if upon the evidence they believe the testator possessed capacity to make the said alleged will at the time of its execution, the alleged will must be sustained; for the court instructs the jury that the right to dispose of one's property by will is most solemnly assured by law, and is a most valuable incident to ownership, and does not depend upon its judicious use. The beneficiaries of a will are as much entitled to protection as any other property owners."

"No. 13. The court instructs the jury, for the proponent, that it is competent for the proponent, J. P. Hitt, to testify as a witness in this cause, and that it is also proper for them to consider evidence of testamentary intentions of the alleged testator, R. W. Terry, by the proof of declarations made by him in reference to his will, both before and after the execution thereof; and it is for the jury to determine from this evidence,

and the whole evidence in the case, whether the testamentary intentions of the alleged testator were at the time of the making of the declarations in reference thereto by him as stated. If they believe from the evidence that he did make any such declarations, and if from the whole evidence, the jury believe that the intentions of the said alleged testator were really as declared by him before he made the said alleged will, if they believe from the evidence that he made any such declarations, then the jury may legitimately draw an inference that when the subsequent will conformed to the said declarations that the intentions of the said testator had continued down to the making of the said will."

"No. 14. The court instructs the jury, for the proponent, that the jury are the sole judges of the credibility of the witnesses and the weight of evidence. It is for them to say what witness or witnesses have told the truth, and what fact or facts are true, from the evidence. The jury have a right to believe all the testimony of any witness or witnesses, or to reject it all, or they have a right to believe a part of the testimony of a witness, or reject a part, according as they may believe the same to be true or untrue. But they are not authorized to arbitrarily reject the testimony of any witness, or to disbelieve the testimony of any witness in whole, simply because they believe a part of the testimony of the said witness to be untrue; but, if the jury believe any witness has willfully and corruptly sworn falsely to a material fact, they have then the right to reject the testimony of that witness altogether."

"No. 15. The court instructs the jury, for the proponent, that if they shall find a verdict for the proponent the form of their verdict will be: 'We, the jury, find for the proponent, J. P. Hitt, that the instrument of writing presented by him for probate herein is the true, only, and original last will and testament of R. W. Terry, deceased.'"

"No. 16. The court instructs the jury, for the proponent,

that, while there are certain presumptions of law in this as in all other cases, still all presumptions yield to proof, and where there is positive testimony on any subject the jury will try this case on such testimony, and not on any presumptions."

The court refused the following instructions for the proponent: Instruction No. 1, which was a peremptory instruction, and instructions Nos. 7 and 9, which were afterwards given as modified, as hereinafter set out:

"No. 7. (As asked.) The court instructs the jury, for the proponent, that by undue influence it is not meant that the will of the alleged testator is to be held void if the jury believe that he was asked, or persuaded even, by the proponent, to make the will as he did; but, to constitute that undue influence which will avoid a will, it is necessary that the proof shall show that the proponent, J. P. Hitt, in persuading the alleged testator to make and execute the said will exercised over his mind so strong an influence that the will was not a voluntary will of said testator, but was such influence as to take away, and did take away, the free agency of the testator. And unless the jury believe from the evidence that the said alleged testator, R. W. Terry, was not a free agent in the making and executing of the said will, they will find for the proponent upon this issue of undue influence."

"No. 9. (As asked) The court instructs the jury, for the proponent, that if they believe from the evidence that the alleged testator, R. W. Terry, at the time of the making and executing of the instrument of writing presented for probate herein, was of sound, disposing mind, memory, and understanding, then the law presumes, in the absence of confidential relations between the parties, that the act of the alleged testator in the making and executing of the said alleged last will and testament was free and voluntary, and this presumption is of evidential value, and the jury will find for the proponent upon the issue of undue influence, unless evidence has been introduced which proves

to their satisfaction that the proponent, J. P. Hitt, unduly influenced the execution of the said will, or that confidential relations existed between the testator and proponent."

Instructions No. 7 and No. 9, were modified by the court and given as modified and read as follows:

"No. 7. (As modified and given) The court instructs the jury, for the proponent, that to constitute that undue influence which will avoid a will it is necessary that the proof shall show that the proponent, J. P. Hitt, in persuading the alleged testator to make and execute the said will, exercised over his mind so strong an influence that the will was not a voluntary will of said testator, but was such influence as to take away, and did take away, the free agency of the testator; and unless the jury believe from the evidence that the said alleged testator, R. W. Terry, was not a free agent in the making and executing of the said will, they will find for the proponent upon this issue of undue influence."

"No. 9. (As modified and given) The court instructs the jury, for the proponent, that if they believe from the evidence that the alleged testator, R. W. Terry, at the time of the making and executing of the instrument of writing presented for probate herein, was of sound, disposing mind, memory, and understanding, then the law presumes, in the absence of confidential relations between the parties, that the act of the alleged testator in the making and executing of the said alleged last will and testament was free and voluntary, and this presumption is of evidential value."

The court gave the following instructions for the contestants, to-wit:

"No. 1. The court instructs the jury that, if they find for the contestants, the form of their verdict will be: 'We, the jury, find for the contestants that the instrument of writing propounded by the proponent, Hitt, purporting to be the only true and original last will and testament of the said R. W. Terry,

deceased, is not the true and original last will and testament of said R. W. Terry, deceased.' "

"No. 2. The court instructs the jury that the law does not require that the contestants shall prove that the deceased, Terry, was insane at the time of the execution of the paper propounded by Hitt for probate."

"No. 3. The court further instructs the jury that, if they believe from the evidence that the said Terry was insane at all times shortly before the alleged signing of the said paper, then the law presumes that the like condition of mind continued up to and at the time of the execution of the said alleged signing."

"No. 4. The court instructs the jury that if they believe from the evidence that the deceased, Terry, was before and at the time of the signing of the said alleged instrument of writing a confirmed and perhaps a hopeless invalid, and that from said cause, or from any other cause, he had in any degree lost any of his mental powers, or that his mind was then in any way impaired, it is the duty of the proponent to prove to the jury by a clear preponderance of the evidence that at the time he signed the said alleged instrument he was fully and thoroughly informed and knew exactly the contents and effect thereof; that he, the said Terry, was then and there possessed of ample and sufficient testamentary capacity to make a will; that he, the said Terry, understood fully the business in which he was then about to engage, and in which he was then engaged, and all of the elements thereof; that he then recollected, and understood or comprehended then and there, the nature and condition of his property, and the extent of his estate, the persons who were or should be the natural objects of his bounty, and his relations to them and their relations to him, the manner in which he wished to distribute his said property among them, or to withhold the same from them, or any of them, and the full scope and bearing of the provisions of the said paper which he was then and there about to sign; that it is not enough that he should

have known said facts, or any or all of said facts, when said paper was written by the said proponent, Hitt, in the house of the said Hitt, but that he must have known, and did know and comprehend and understand, all of the said facts above recited, and that the said Terry must have possessed the said testamentary capacity as above described fully at the time and place at and when he signed the said paper, and that he must then have known and then been fully informed of all of the contents and provisions thereof; and if the proponent has not proved all of said facts to the satisfaction of the jury by a clear preponderance of evidence it is the duty of the jury to return a verdict for the contestants."

"No. 5. The court instructs the jury that, in determining the question of the existence or nonexistence of undue influence operating upon the mind of the said Terry at the time of the execution of the alleged testamentary paper, the jury should take into consideration the mental and physical condition of the said Terry at and before the alleged signing thereof; that the jury are the sole judges as to whether any undue influence was present and operated in any way upon the mind of the decedent when he signed the said paper; and in determining the question of the existence of undue influence the jury may take into consideration the unnaturalness or unreasonableness of the said paper so signed by the said Terry, that a man weak and suffering from disease may be influenced by others who bear towards him a position of trust and confidence, and upon whom he may be in any way dependent, if such they believe to be the facts from the evidence in the case, any sudden change of testamentary intent or disposition, the failure to afford the relatives of the said Terry an opportunity to see or communicate with him before the signing of the said alleged instrument, and any and all other facts in evidence in the case which the jury may believe in any way establishes the existence of undue influence. And the court further charges the jury that if the proponent, Hitt, has not established to the satisfaction of the jury by a clear prepon-

derance of the evidence the absence of all undue influence in
the writing of the said paper, or in the inserting therein of any
of the provisions found therein, or in the bringing about of the
signing of the said paper, or if the evidence on said point or
points be evenly balanced, then it is the duty of the jury to re-
turn a verdict for the contestants."

"No. 6. The court charges the jury that the law watches with
jealousy the transactions between a physician and his patient;
that such relations are confidential relations, and afford in the
eye of the law an opportunity and a temptation on the part of
the physician to take advantage thereof; that where a physician
writes a will for his patient, which provides for a benefit to the
physician, the law denominates such act as a matter of fact to
be a badge of fraud, which must be overcome by evidence of
the absence of undue influence; that where such physician oc-
cupies also with respect to his patient a position of personal
friendship and confidence, bestowed upon him by the patient,
the presumption of the law is that the physician has exercised
over his patient an undue influence; and such presumption of
law also exists, whether the relations of friendship and con-
fidence exist or not, and such presumptions are of evidential
value."

"No. 7. And the court further charges the jury that if they
believe from the evidence that the proponent, Hitt, was the phy-
sician of the decedent, Terry, and that while he occupied that
relation towards the deceased he wrote out the paper which he
now offers to the court for probate as the last will and testa-
ment of the deceased, then the presumption of law arises that
the paper in question was and is the work and product of the
will of the said proponent, J. P. Hitt, and not the product of
the will and mind of the said R. W. Terry; and this presump-
tion is *prima facie* evidence of the existence of such undue
influence, whether the contestants offer any proof of undue in-
fluence by Hitt over Terry or not."

"No. 8. The court instructs the jury that, if any person dies

without making a will, the law first charges upon and against any and all property of which he may die seised and possessed the payment of all of his debts, and then his lands and his property of every kind shall descend according to the laws of Mississippi to his next of kin, as defined by the said laws; that according to the laws of descent of the state of Mississippi the property of the deceased, Terry, was and is chargeable, first, with the payment of all of the debts of the decedent, no matter by whomsoever such indebtedness may be held, nor to whomsoever the same may be payable; that by the laws of the state the personal property of the decedent is first chargeable with the payment of his debts, and that thereafter both personal and real property descends in equal shares, to the contestants, Elisha Terry, Crenshaw Terry, Mary Anne McClure, the children of Maggie Taylor, who take in her name the share of the said Maggie Taylor, and the said Lillie Hart, who takes in her name the share of her mother, Delia Hart."

"No. 9. The court instructs the jury that the burden of proof is on the proponent, Hitt, throughout to establish by a clear preponderance of evidence, to the entire satisfaction of the jury, and of each and every one of them, the fact that the paper offered by him for probate was signed by the decedent, Terry, at a time when he, Terry, knew and understood the entire contents, and the full purport and effect thereof, as his sole and only true and original last will and testament, and that he signed the same, as above stated, in the presence of two or more credible witnesses, and that the same was, at the request of the said testator, in his presence, attested in writing by two or more credible witnesses, and that the said testator was at said time fully informed and knew the entire contents of the said paper, and that he, the said decedent, then and there published and declared the said instrument in the presence of two or more credible witnesses then and there to be his true and only original last will and testament, and that he, the said decedent, was then of sound and disposing mind, memory, and understanding,

and that he, the said decedent, was wholly uninfluenced or in any manner guided or directed about or in or concerning the signing, publication, or securing of any attestation thereof by any person whomsoover; otherwise, the jury cannot return a verdict for the proponent."

"No. 10. The court instructs the jury that if they believe from the evidence that the proponent, Hitt, was the medical adviser of the said decedent, Terry, and that at the time the said paper in evidence was drafted the said proponent, Hitt, was the physician of the said decedent, and that the fact that said proponent was the physician of the said Terry in any way influenced the said Terry, directly or indirectly to make any provision in said instrument for the said Hitt, then it is the duty of the jury to find that the said instrument is without force and effect, and the jury will thereupon find against the proponent."

"No. 11. The court instructs the jury that if they believe from the evidence that the proponent, Hitt, was the physician of the deceased, Terry, and that the said Hitt wrote on his own tpyewriter the paper introduced by him for probate, then the law presumes that the said instrument was procured to be signed by said Hitt, because of an undue influence exercised over the said Terry by the said Hitt, whether the said Terry was or was not then and there of sound and disposing mind and memory at the time of the signing; and the jury will, in such event, return a verdict for contestants, unless such presumption is overcome by evidence."

"No. 13. The court instructs the jury that if they believe from the evidence that the proponent, Hitt, was the physician of the decedent, Terry, and that the deceased, Terry, was the patient of the said Hitt, and that while such relationship existed the said Hitt agreed with the said Terry to accompany him to Baltimore to undergo a surgical operation or other treatment, and that the said Hitt and the said Terry agreed that if thereafter the said Terry should recover he would pay the said Hitt his expenses incurred for making the said trip and a reasonable

compensation for his services, either fixed or thereafter to be agreed upon between the parties, and that in the event the said Terry died the compensation that the said Hitt should receive for his said expenses and services should be the benefits provided for him by the terms of the instrument of writing now propounded by the said Hitt for probate, as the true and original last will and testament of the said Terry, then the jury will return a verdict for the contestants."

"No. 14. The court instructs the jury that the testamentary capacity of the decedent, Terry, must be shown by the proponent, Hitt, and that the burden of proof is upon the said proponent to show such testamentary capacity by a clear preponderance of the evidence; and if the jury believe from the evidence that the said proponent has not met and successfully carried said burden, or if the testimony upon that point is evenly balanced, it is the duty of the jury to return a verdict for the contestants."

"No. 15. The court instructs the jury that the burden of proof is upon the proponent, Hitt, to prove by a clear preponderance of evidence that the paper in evidence was not signed by the decedent, Terry, because of any undue influence over the said Terry by the said Hitt, and if they believe that the said proponent has not successfully carried said burden, or if they believe that the said proponent, Hitt, has not clearly overcome the presumption of undue influence, based on the relationship of the parties, *prima facie* existing in favor of contestants, that the said paper was signed by the said Terry because of the exercise over him of any undue influence by the said Hitt, or if they believe that the testimony upon the question of undue influence is evenly balanced, then it is the duty of the jury to return a verdict for the contestants."

"No. 16. The court instructs the jury that the burden of proof in this case never shifts from the proponent to the contestants, but that it is always, throughout the case, placed by the law upon the said proponent, Hitt, and, if the said Hitt has

not established his case in every particular by a clear preponderance of the evidence, it is the duty of the jury to return a verdict for the contestants."

"No. 17. The court instructs the jury that it is not only the duty of the proponent to establish the testamentary capacity of the decedent, but also to establish that the said decedent had not been unduly influenced and was not unduly influenced either in the preparation or execution of the said instrument. The proponent must not only establish by a clear preponderance of evidence the fact that the said Terry possessed a sound and disposing mind, and understanding at the time of the signing of the said instrument, and that he knew the contents thereof, but also, if and after he shall have so established the existence of the said testamentary capacity, the said proponent must furthermore establish by a clear preponderance of the evidence the additional fact that, notwithstanding the fact that the jury may believe from a clear preponderance of evidence that the said Terry, at said time, possessed a sound and disposing mind, memory, and understanding, but also that the said Terry was not in any way unduly influenced in or about or concerning either the preparation or execution of the said instrument last aforesaid."

"No. 19. The court instructs the jury that if they believe from the evidence that the proponent, Hitt, exercised any undue influence over the testamentary capacity of decedent, Terry, at any time before or at the execution of the said paper, the law presumes that such undue influence continued up to and at the time of the alleged execution thereof."

"No. 20. The court instructs the jury that if they believe from the evidence that the deceased, Terry, was before or at the time of the alleged execution of the said paper, alleged to be his will, laboring under a delusion or delusions of the mind on any subject or subjects, or with respect to any person or persons, and that the said paper was the result in whole or in part of any such delusion or delusions, then said paper is void, and the jury will

so find, although they may believe from a preponderance of the evidence that the mind of the said Terry was sound on all other subjects."

*F. A. Montgomery,* for appellant.

As to the sanity of the testator at the time of the making of the will, the appellant was clearly entitled to a peremptory instruction in his favor. The subscribing witnesses to the will, and also others who saw the testator on the date in question, testified that the testator was absolutely sane on the day he executed the instrument. The only evidence to contradict this was circumstantial. While the burden of proof was upon the appellant, this burden was fully met and overcome by a preponderance of evidence. *King* v. *Rowan,* 82 Miss., 1, 34 South., 325; *Sheehan* v. *Kearney,* 82 Miss., 688, 21 South., 41; *Martin* v. *Perkins,* 56 Miss., 204; *Payne* v. *Banks,* 32 Miss., 292; *Pidcock* v. *Potter,* 8 Am. Rep., 181; 1 Jarman on Wills, 66, 72; 29 Am. & Eng. Ency. of Law (2d ed.), 105.

The lower court erred in modifying the seventh and ninth instructions for proponent. *Sheehan* v. *Kearney,* 82 Miss., 688, 21 South., 41.

The second instruction for the contestants is misleading and the third instruction for the contestants, while a correct legal proposition, is not sustained by the evidence in this case, because no witness, even for the contestants, ever testified that the mind of the testator was insane at all times. The fourth instruction for the contestants is on the weight of evidence and should not have been given. The fifth instruction for the contestants contains many inferences which are not supported by any of the testimony, and should not have been given.

The sixth, seventh and eleventh instructions for the contestants, are erroneous, because, in substance, they announce the incorrect proposition of law that the circumstance that the proponent was the physician of the testator, and wrote the will,

receiving a legacy thereunder, of itself raises a *prima facie* presumption that the will was made by the testator through the undue influence of the proponent.

The fact that the will was drawn by the beneficiary is not *prima facie* evidence of undue influence.   29 Am. & Eng. Ency. of Law (2d ed.), 114.   No presumption of undue influence arises from the fact that the beneficiary is the testator's medical attendant.   *Ibid.*, 126; *Yardley* v. *Culberson*, 56 Am. Rep., 218.   The proof so overwhelmingly shows that the will in question was the one which the testator wanted to make and had contemplated making for a long time before he ever mentioned it to the appellant that there can be no room for any suspicion, much less for any presumption arising from the relationship of the parties.

The tenth instruction given for the contestants also is erroneous in that it charges emphatically that, if the proponent's relationship as physician of the testator in any way influenced the testator directly or indirectly to make any provision in such instrument for proponent then they must find for the contestants. Now, the proof shows that he was the physician of the testator, and the testator had great confidence in him as a physician and affection for him as a friend and physician, and of course if he had not been his physician, the intimate friendship existing between them might not have existed at all and doubtless would not.   The jury were bound to believe that the fact that the proponent was the testator's physician itself influenced the testator to make him a beneficiary under the will, as he had a right to do, and hence this instruction prejudiced the case of the proponent, and this constituted reversible error.

The thirteenth instruction for the contestants is also erroneous because the proof does not support the hypothesis stated in that instruction.   It is not true that the proponent, Hitt, and the testator, Terry, agreed that, if Terry should recover, he would pay Hitt his expenses incurred in the trip to Baltimore and a reasonable compensation for his services, but that, if Terry

should die, Hitt's compensation for his services and expenses should be the benefits provided for him by the terms of the will, and yet the jury are told that if they believe the foregoing they should find a verdict for the contestants. The only evidence on the subject is the testimony of Dr. Hitt himself to the effect that there was never any agreement of the kind between them; in fact that there was never any distinct agreement at all about what his compensation would be for going to Baltimore with the testator.

Of course, in such case if the testator died, although there was no agreement to that effect it was not necessary to probate the proponent's claim for his services in going to Baltimore because under the will everything was his, charged with the specific legacies and debts, and if the will was good and sustained in the courts there would be no sense in his probating a claim against himself, but he never does say that he was under agreement such as is set out in this instruction. But, even if he had, and even if the facts were as hypothetically stated in that instruction, that is not the law, for it has been repeatedly held that a person may make a valid will in pursuance of a contract to do so. *Laird* v. *Villa,* 106 Am. St. Rep., 420; *Cunningham* v. *Davis,* 62 Miss., 367; *Anding* v. *Davis,* 9 George, 574; *Stellmacha* v. *Bruder,* 99 Am. St. Rep. 609.

The fifteenth instruction for contestants is not the law, because it states in emphatic language the erroneous proposition heretofore objected to that the relationship between the parties, the physician and the patient, raises the *prima facie* presumption of undue influence.

Taken in connection with the fifteenth instruction, or taken by itself, the sixteenth instruction for the contestants is manifestly error. It tells the jury that the burden of proof in this case *never shifts,* which is not the law, as has been expressly decided by our own supreme court in express language. *Sheehan* v. *Kearney,* 82 Miss., 688, 21 South., 41.

Instructions Nos. seventeen, nineteen and twenty for the con-

testants are misleading and erroneous, especially instruction twenty, in referring to the delusions of the mind on the part of the testator, there being in this record absolutely no evidence of such delusions of the mind of the testator, which would in any way affect the will.

*Mayes & Longstreet,* on the same side.

The court erred in granting the second instructions for contestants. In *Sheehan* v. *Kearney,* 82 Miss., 688, 21 South. 41, this court held that when the issue is that of mental capacity or undue influence or both, "the burden as to both is on proponent throughout, and there is no shifting of this burden. But the burden in both respects is satisfied by the introduction of the will and the record of the probated will and the contestants must then offer proof to overcome the *prima facie* case thus made in both respects." This second instruction for the contestants therefore cannot be upheld under the idea that they were not required to prove the deceased insane, or that it was obligatory on the proponent to prove the deceased's sanity. That the formal order of probate was intercepted by a *caveat* does not change the situation, the proponent having on the trial produced the attesting witnesses, and in fact done throughout all that the statute required of him. This second instruction further contains the clause that contestants were not required by law to prove that Terry was insane "at the time of the execution of the paper propounded." But this was just exactly what they should have been required to prove, the whole case revolving around this issue as a pivotal point.

The third instruction for contestants is vicious because it assumes evidence to exist in the case which is however wanting. It says to the jury that "if they believe from the evidence that Terry was insane at all times shortly before the alleged signing of the said paper," etc. The court will search the record in vain for any proof that Terry was insane at all times shortly before the signing.

The fourth instruction for contestants is erroneous, because it overstates in a most extraordinary degree the obligation of proof resting upon the proponent. It says, for instance, that if the jury believe that Terry was a confirmed and perhaps hopeless invalid, and that from such cause or other cause "he had in any degree lost any of his mental powers, or that his mind was then in any way impaired, it is the duty of the proponent to prove," etc. This proposition is not the law. That a man has lost to some degree some of his mental powers, or that his mind is in some way impaired, will not disable him from making a will. It is not the law that, in order to make a valid will, a man's mind shall be at its clearest and brightest condition; yet the instruction practically implies this. 28 Am. & Eng. Encyc. of Law (2d ed.), 70. The instruction also exacts that the testator must have known and understood the contents of the will, and actually have recollected the nature and condition of his property, extent of his estate and the details of his business. If this instruction were correct, a man whose mind had, from any cause, been in the slightest degree impaired, yet who was of testamentary capacity, could not make a valid will if there should be any portion of his property, however small, the nature and condition of which, or the extent of his interest in which, he did not fully understand. See *Kerr* v. *Lundford,* 2 L. R. A., 668. Another objection to this fourth instruction is that, it places upon the proponent the obligation "to prove to the jury by a clear preponderance of the evidence, that at the time he signed," etc. But the burden of proof should be, not on the proponent, but on the contestants, under the circumstances. *French* v. *Day,* 89 Me., 441; *Hall* v. *Wolfe,* 61 Iowa, 55; *Coyle* v. *Commonwealth,* 100 Pa., 573; *King* v. *Rowan,* 82 Miss., 1, 34 South., 325; *Hoffman* v. *Land,* 111 Mich., 158; *Ricketts* v. *Joliff,* 62 Miss., 440.

The fifth instruction for the contestants is incorrect in that it tells the jury that they may take into consideration the relationship of parties and the unnaturalness of the will. The instruc-

tion, therefore, assumes and practically states to the jury, as a *dictum* of fact, that the provisions of the will must be considered unnatural and unreasonable. The lower court, in granting this instruction, badged the will as being unnatural. The court in fact usurped the functions of the jury in practically telling them that the will was unnatural. *Wetter* v. *Haversham,* 60 Ga., 193; *Re Groot Will,* 72 Hun, 548; *Clark* v. *Schell,* 84 Hun, 28.

The sixth instruction for contestants is vicious, because: (1) it misstates the attitude of the law itself in respect to the relation between physician and patient; (2) it is confusing, misleading and senseless in its propositions; and (3) it violates, in at least two particulars, the rule against instructing the jury on the weight of the evidence. *Siebert* v. *Hatcher* (Mo.), 102 S. W., 962; *Adam's Estate,* 10 Pa. Dist., 237; 29 Am. & Eng. Ency. of Law (2d ed.), 126; *Stirling* v. *Stirling,* 64 Md., 143. That this sixth instruction is on the weight of the evidence is shown by its statement that the presumptions set forth and deduced from the evidence of certain parties, are valuable as evidence. Had the court contented itself with merely stating that the jury should consider such presumptions, instead of distinctly stating that such presumptions were valuable as evidence, the case would be different.

The ninth instruction for the contestants incorrectly states the rule in respect to undue influence. It explicitly instructs that unless it be shown by a clear preponderance of evidence that the deceased was wholly uninfluenced, or in any manner guided or directed as to the execution of the will, by any person whomsoever, the will must be held void. This is not the law. It is not influence, but influence pressed to such extent as that the law holds it to be undue, which is objectionable. 29 Am. & Eng. Encyc. of Law (2d ed.), 103; *Powell* v. *Plant* (Miss), 23 South., 400; *Johnson* v. *Farrell,* 215 Ill., 542; *Waters* v. *Waters,* 222 Ill., 26; *Schneider* v. *Vosburg,* 106 S. W., 1129.

The tenth instruction for contestants is incorrect, for it says that if the fact that Hitt was Terry's physician *in any way* influenced Terry, directly or indirectly, in the provisions of the will, then the jury must hold the will void. The instruction does not inform the jury that the presumption from the relationship of physician and patient may be rebutted, but under this erroneous instruction, the bare existence of the relationship and the bare fact that such relationship moved the testator to bequeath the legacy, constitute the *Alpha* and *Omega* of the argument. Under this instruction it makes no difference how it came about that the testator conceived the desire of benefiting the physician in his will, and it makes no difference whether the legacy is just or unjust.

The facts hypothecated in the eleventh instruction for contestants do not raise a presumption of undue influence, hence the instruction is defective. Those facts are two: first, that Hitt was Terry's physician; and, second, that Hitt wrote the document on his typewriter. The evidence distinctly and satisfactorily shows that Hitt wrote the will on his typewriter at the express request of Terry. The idea presented by the instruction is that, if the bare draft of the will was made by Hitt, no matter how long or how independently it was deliberated over by Terry before he finally signed it, or how absolutely Hitt acted merely as amanuensis for Terry in making the draft of the will, being so written, it was evidence of undue influence. This is not the law. Something more than this is necessary to constitute it evidence of such influence. *Stirling* v. *Stirling,* 64 Md., 143; 29 Am. & Eng. Ency. of Law (2d ed.), 115.

The seventeenth instruction for contestants is erroneous in at least two particulars: first, it is vague and confused, tending to embarrass and confuse the jury instead of helping toward an intelligent consideration of this delicate issue; secondly, it is erroneous in that it informs the jury that the proponent must establish by a clear preponderance of the evidence the fact that the testator "knew the contents" of the will.

The nineteenth instruction for contestants is defective in telling the jury that if they believe from the evidence that Hitt exerted any undue influence over the testamentary capacity of the decedent at any time before or at the time of execution of the document, the law presumes that such undue influence continued up to and at the time of the alleged execution. There are two faults here. In the first place, the instruction confuses the jury by making reference to "undue influence over the testamentary capacity," of the decedent. Undue influence is one thing; testamentary capacity is another. *Sheehan* v. *Kearney,* 82 Miss., 688, 21 South., 41. It is sheer nonsense to consider Hitt's exerting an undue influence over Terry's "capacity." Secondly, the continuance of undue influence is not a presumption of law, but one of fact, and a disputable presumption at the most.

We question whether there is sufficient evidence in the record, in regard to delusions under which the testator is supposed to have labored, to support the granting of the twentieth instruction for contestants.

The case of *Meek* v. *Perry,* 36 Miss., 190, relied on by appellees, was decided by a divided court, forty-nine years ago. Its holding, so far as we can discover, has never been re-affirmed in this state.

*J. T. Love,* for appellees.

The jury's verdict was correct, and the decree of the court below should be affirmed. The evidence distinctly shows that the appellant, Dr. Hitt, unduly influenced the decedent, Terry, to make this unrighteous will. It will be noted that Terry was a hopeless invalid, that the will devised and bequeathed practically all of Terry's property to this physician to the exclusion of the testator's closest kindred; that the will was worded, drafted, written, by Hitt; was not signed by Terry at or near his home, but was signed by him in a city without this state, in the presence of persons almost strangers to the testator, just on

the verge of the testator's departure to have performed an extremely hazardous surgical operation. Not one of the three attesting witnesses was acquainted with the others. The will was then not delivered to the testator, but was mailed by the physician, the beneficiary therein, to his wife to be locked up and kept with sacred care. The will was signed by Terry without having read it over, and in fact, none of the attesting witnesses read it. We insist that the rule, laid down in *Ingram* v. *Wyatt,* 4 Hagg. Eccl. Rep., 384, and cited with approval in *Batlin* v. *Barry,* 1 Curt., 614, 56 Am. Rep., 229, is the proper rule: "Where a paper has been drawn up by a person for his own benefit, or when he takes a considerable benefit under it, the presumption lies strongly against the act, and it must be proved by satisfactory evidence *dehors* the instrument, that it was the free and voluntary act of a capable testator, and executed with full knowledge of its contents and effects." See also *Norfleet* v. *Beall,* 82 Miss., 538, 34 South., 328.

At the very threshold of this case the appellant is met by the doctrine of the well considered case of *Meek v. Perry,* 36 Miss., 190. The law, upon grounds of public policy, presumes the existence of undue influence from the known confidential relations of guardian and ward, physician and patient, client and attorney, and trustee and *cestuis que trustent;* and, in a case like this where the trusted physician has prepared the will under which he is to receive very great benefits to the exclusion of those who would otherwise inherit, the circumstances must demonstrate full deliberation on the part of the patient, and abundant good faith on the part of the physician, else the will must be held invalid. Beech on Wills, 201; 49 Cent. Dig., sec. 393, col. 466; *St. Legis' Appeal,* 91 Am. Dec., 735; *Yardley* v. *Cuthbertson,* (Pa.), 56 Am. Rep., 218; *Audenried's Appeal,* 33 Am. Rep., 736; *Dickerson* v. *Bradford,* 31 Am. Rep., 23; *Garvin's Adm'r* v. *Williams,* 44 Mo., 465, 100 Am. Dec., 314.

The testimony was most ample to support the jury's finding,

and, as there are no material errors in the case, the decree of the lower court must be affirmed.

In answer to the objections of appellant to the sixth, seventh and eleventh instructions for the contestants (appellees), we merely refer to the decisions of the cases of *Meek* v. *Perry, supra,* and *Norfleet* v. *Beall, supra.*

*J. W. Cutrer,* on the same side.

The preponderant weight of the evidence showed that the alleged testator did not possess the requisite testamentary capacity, at the time he signed the alleged will, hence the jury's verdict was correct. *Russell* v. *State,* 53 Miss., 367; *Woods* v. *State,* 58 Miss., 741.

The evidence sufficiently showed that the appellant, Dr. Hitt, unduly influenced his patient, Terry, to make the will which so munificently provided for the appellant. This physician is shown to be a man who has hardly reached middle life, prosperous, vigorous, strong and alert mentally and physically. The testator is shown to have been a physically weak and debilitated invalid, almost demented at times, and pliable as wax in the hands of his physician, the appellant; having absolute confidence in the appellant, and ready to yield at all times, without discussion or protest, to the physician's slightest suggestion. The jury could hardly have found differently from what they did. *Norfleet* v. *Beall,* 82 Miss., 538, 34 South., 328; *King* v. *Rowan,* 82 Miss., 1, 34 South., 325.

The presumptions are all against the instrument sought to be probated. "The fact that the person who drew the will for the testator or who was active in procuring its execution, is named as the beneficiary in it, was sufficient to make the instrument invalid under the Roman civil law." I Underhill on Wills, sec. 137. There are many courts which hold that the circumstance that a party draws a will or actively superintends its execution under which he alone takes a legacy, and without positive proof of the

active procurement of the benefit and without the existence of confidential relations between the parties, raises a presumption of undue influence exerted by him, which must be rebutted by clear and satisfactory evidence. Such person has, then, acording to these authorities, the burden of proof of showing that the will was voluntarily executed, and by proof, other than by the testimony of the benefited party, that the testator, when he signed the will, had an adequate knowledge of its contents. *Drake's Appeal,* 45 Conn., 9; *Beall* v. *Mann,* 5 Ga., 456; *Hughes* v. *Meredith,* 24 Ga., 53; *Duffield* v. *Robeson,* 2 Har., (Del.), 375; *Brown* v. *Fish,* 53 Law Times, 405; *Tyler* v. *Gardiner,* 35 N. Y. App., 599; *Wood's Ex'rs* v. *Devers* (Ky.), 19 S. W., 1; *Harvey* v. *Sullens,* 46 Mo., 147; *Yardley* v. *Cuthbertson,* 108 Pa. St., 396; *Re Slinger,* 72 Wis., 23; *Higginbothim* v. *Higginbothim,* 106 Ala., 314, 17 South., 516; *Jones* v. *Simpson,* 171 Mass., 474.

Many courts hold that the existence of confidential relations alone, aside from any other facts, creates a presumption of undue influence calling upon a proponent of a will to rebut by clear and positive evidence the existence of such influence. *Montague* v. *Allen,* 78 Va., 592; *Brown* v. *Bell,* 58 Mich., 58; *Bush* v. *Delano,* 113 Mich., 321; *Donovan* v. *Bromley,* 113. Mich., 53; *Lyon* v. *Dada,* 111 Mich., 340; *Jones* v. *Roberts,* 37 Mo. App., 163; *Yardley* v. *Cuthbertson,* 108 Pa. St., 395. Also Underhill on Wills, § 131.

The law looks with distrust and suspicion upon all transactions between persons occupying special or confidential relations, where one has obtained an advantage or a benefit which is inconsistent with his position. The rule which presumes the existence of undue influence is always invoked and applied as between guardian and ward, parent and child, and physician and patient. In such case there is no necessity for showing fraud or imposition practiced upon the one bestowing the consideration; that is presumed, and it is only necessary to show that during the continuance of the intimate relations the benefit was

secured by the guardian or parent or physician, as the case may be, and the burden is then placed upon the beneficiary to repel the imputation cast upon the transaction by operation of law. *Garvin's Adm'r* v. *Williams,* 44 Mo., 465; *Gay* v. *Gillilan,* 1 Am. St. Rep., 712; *St. Leger's Appeal,* 91 Am. Dec., 735; *Carroll* v. *Hanse,* 27 Am. St. Rep., 469; *Richmond's Appeal,* 21 Am. St. Rep., 85; *Meek* v. *Perry,* 36 Miss., 190. See also *Fugate* v. *State,* 85 Miss., 86, 37 South., 557; *Coffin* v. *United States,* 156 U. S., 460.

It must not be forgotten that the alleged will made a most unnatural disposition of the property of the decedent, and this strengthens the presumption of undue influence. *Meier* v. *Buchter,* 197 Mo., 68; *Chambers* v. *Chambers,* 70 N. Y. Suppl., 483; *Re Elster,* 78 N. Y. Suppl., 871.

However, the evidence of undue influence is so full, convincing and preponderant that any consideration of presumptions of law is immaterial.

The instructions for appellees are drawn up on well established rules covering the rights of the litigants. Even if there were material errors in them, the instructions for appellant cover and remedy the errors.

The law with reference to testamentary capacity is correctly stated in the instructions for appellant and appellees. There is no requirement anywhere in the instructions that the alleged testator should have recalled and had in mind, when signing the instrument, the several and separate items of his estate.

The fact that one of the instructions for the contestants, appellees here, required the appellant as proponent to show "by a clear preponderance of the evidence" that the alleged testator, at the time he signed the instrument, knew its contents, is not sufficient to reverse the decree of the lower court.

Argued orally by *F. A. Montgomery,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The appellant is a physician, who was and has been continu-

ously, for the past ten or twelve years an active practitioner at Dubbs, in Tunica county. One of his patients during practically all of that time was R. W. Terry, the testator in this case. Terry lived at Walnut Lake, near Dubbs. Terry's father, W. E. Terry, a number of years ago bought a valuable plantation property on Walnut Lake, and Terry, a few years afterwards, moved on the property. This property was developed by the father, who devoted practically all of his time to the work, and who invested in these delta lands all the outside property which he owned (except his old home place in Panola county, which he retained), and practically all of the available means which he had acquired and possessed. Having made the Walnut Lake plantation quite a valuable estate, he took his son, the said R. W. Terry, into copartnership with him, and the firm conducted a planting and mercantile business on Walnut Lake. During this while Terry, the son, purchased in his own name and improved outside and adjoining lands, and paid for them out of the revenue derived from the original W. E. Terry lands. The father died some years ago, and at the instance of the brothers and immediate family of Terry, the son, the copartnership business was wound up by the son, and the property divided and all leased out. This was done without trouble between R. W. Terry and his brothers and sisters. In the latter years of the life of R. W. Terry, the testator here, he became a confirmed and hopeless invalid. During all of this time the appellant was his physician, and his close friend and confidential adviser. The malady from which said Terry was suffering was incurable, as testified to by Dr. Howard A. Kelly, of Baltimore, a very eminent specialist, who operated on Terry a short while before he died. According to the testimony of Dr. Kelly, the patient was in a profoundly anæmic condition, his blood registering only fifty-six per cent. of coloring matter, whereas the normal shows one hundred; was in an extremely bad condition, which was chronic and of several years' duration; was suffering from a malady which was accompanied by pain and which had an ex-

tremely depressing effect upon the entire nervous condition, and it appears that at times he would, by his malady, be made extremely nervous, and at times irrational; that he was in need of constant medical attention for the rest of his days, and was in the advanced stages of this incurable malady, "Tuberculosis of the bowels and rectum, with all the accompanying cachetic symptoms, such as weakness, emaciation, anæmia, and helplessness; that the constant drain upon his system, together with the absorption of the tuberculous toxins, had caused a marked depletion in the physical condition of the patient, resulting in weakness, loss of appetite, emaciation, lack of will power, and general malaise." In short, it is perfectly clear from this testimony that the testator was in a very profoundly helpless condition as to body, which necessarily seriously affected his will power and his mental balance. Some little while after returning from Baltimore, he went back to his home and spent a while with his brother, E. M. Terry, and some little later died at his old home in Panola county.

The will in this case was made on the 19th of March, 1906, and is as follows:

"Know all persons by these presents, that I, R. W. Terry, being of sound mind and free to act as I will and desire, do hereby make my last will and testament, to-wit:

"First. I desire that all my burial expenses be paid and all other debts that I may owe at the time of my death.

"I next bequeath all of my possessions, including money, accounts, personal property and real estate, to my dear friend, Dr. J. P. Hitt, to hold, have and own as his own property, provided that he, the said J. P. Hitt, shall and does comply with requests and conditions hereinafter mentioned, to-wit: That the said J. P. Hitt shall, within two years after date of my death, pay to my brother, E. M. Terry, twenty-five hundred dollars ($2,500.00) in cash; to my brother Crenshaw Terry, five hundred dollars ($500.00) in cash; to my sister, Mrs. Clara McClure, five hundred dollars ($500.00) in cash; to my step-

mother, Mrs. Ida G. Terry, one thousand dollars ($1,000.00) in cash; to my friend, Benj. Matthews, twenty-five hundred dollars ($2,500.00) in cash; to my niece, Lillie Hart, two thousand dollars ($2,000.00) in cash. The bequest to Lillie Hart is on the condition that, if she lives to be fifteen years old, then this money is to be delivered to her by the party acting as her guardian at that time; her guardian to take charge of her money at the time the other beneficiaries of this will receive their money. If said Lillie Hart does not live to be fifteen years old, then I bequeath that this two thousand dollars be divided equally between my brother, E. M. Terry, and my sister, Mrs. Clara McClure.

"I further desire that if W. C. Gann be owing me anything at the time of my death that the account be canceled and that the said W. C. Gann receive full benefit of the account.

"I hereby appoint Dr. J. P. Hitt executor of this will, and desire that he be required to give good and sufficient bond to insure the faithful performance of his obligation as set forth in former clause of this will.

"Witness my signature this the 19th day of March, A. D. 1906.

"[Signed]   R. W. TERRY.

"Witness:   E. P. MANGUM.
           "L. E. HEATH.
           "C. R. POLLARD."

This will was written by testator's family physician, confidential friend, and adviser, the appellant, in the appellant's own residence, whilst testator was at his house as his patient, on the way to Baltimore, and whilst testator had gone to his house to be treated preparatory to going to Baltimore. The will was not signed when it was written by Hitt in his house. Appellant retained the will and a schedule of the property of Terry, and Terry went home to make ready for his final departure, and returned the next day to Hitt's home, from which place he left on his journey to Baltimore. Hitt retained the will and schedule, and followed on the early train the next morning, overtaking

Terry at Memphis.  The will was executed in the office of the Peabody Hotel, Memphis, Tenn., being there signed by Terry and witnessed by three witnesses—Heath, whom Mr. Terry got at Sledge & Norfleet's as one of the witnesses, and Mangum and Pollard, two other witnesses; these last two witnesses having been secured, Pollard by Heath, and Mangum by some one else; these witnesses being apparently strangers to each other.  No member of the family of the testator had any information whatever that this will had been made until after his death.

So much for the circumstances under which the will was made and executed; it remaining to be said that Hitt retained possession of the will and of the schedule.  Now, it may be further remarked that the testator had stated to E. M. Terry, according to the record, some four or five months before the will was written, that he desired to make a will and provide for the disposition of his property, and that they talked together about the matter and agreed upon the terms of a will, and that the terms were, practically, that all of his brothers and sisters and their descendents were to share equally in the estate, with the further proviso that as to their stepmother, Mrs. Ida G. Terry, she should share as a child in the estate under the will.  Matthews testifies that Terry said a good deal about the will, and stated that "he was mighty sorry he was going to have to make the will as he did, and that it was going to be a shame the way he would have to make his will," and he further testifies that he had told E. M. Terry that he knew enough to break the will.  It is true that there is testimony in the record, also, to the effect that the testator had told some one that he desired to make the will just as it is here made.

A most remarkable statement is made by appellant with respect to his compensation for medical services and attention to Terry on his trip to Baltimore.  Appellant testifies that Terry proposed to him that he would bear his (appellant's) expenses and pay him a reasonable compensation for the time he was gone, and that, as to any future charge, Terry said that if he

(Terry) came back and got well Hitt was to charge him what he thought was right, and if he (Terry) did not get well he had enough to pay it, or, as Hitt puts it, the will in that event spoke for itself. In other words, as we understand it from the record, from the testimony of the appellant himself, the understanding as to compensation was that appellant was to be paid his expenses and a reasonable compensation if the patient survived, and, he was to have the estate, less the charges as set forth in the will, if the patient died, which estate, over and above all legacies, is clearly shown to have been worth about $15,000 to $20,000. Certainly a most extraordinary arrangement; one according to the terms of which it would, manifestly, be to the interest of the physician that the patient should die.

Another fact about the contents of the will is that the testator omitted a large part of his personal property from a list of his personal property which he prepared, and that he also omitted from the will his undivided interest in the estate of his deceased father. On the appellant's attention being called to this last fact, he seems not to have known whether that interest in the father's estate passed to him under the will or not. Both this schedule of property and the will were written by the appellant. Looking to the contents of the will, it is seen that the testator excluded from all participation in his estate persons who would naturally have been the objects of his affection and bounty, and gave to others of that class only meager portions thereof, and had made what would ordinarily be esteemed a most unnatural will. He gave to Matthews the sum of $2,500, and devised and bequeathed all his real estate and personal property, with the exception of a few legacies appearing in the will, to the appellant, his physician. He had three sisters, two of whom were then dead, having left children, and one living. One of his sisters, Mrs. Clara McClure, had a large family, was very poor, and yet was to receive under this will only $500. To Lillie Hart, the child of another sister, he left only $2,000; and to the six children of his oldest sister, Mrs. Taylor, said by some of

the evidence to have been his favorite sister, and who were in extremely necessitous circumstances, he left not even the mention of their names or the name of their mother. Matthews shows that, when the will was read, E. M. Terry was told by Hitt that he (Hitt) expected him to get the old home place, and that when Hitt was asked about the Taylor children getting nothing, and not being mentioned even, he said, "I forgot it," or "We forgot it," or something to that effect. Dr. Hitt also testified that no mention was made whatever at the time of the writing of the will about the interest of the testator in his father's real estate; and he states that on Monday morning following Mr. Will Terry's death he said to Elisha Terry, on Walnut Lake, in answer to the question, "You don't claim Will's interest in my father's estate do you?" "I have never considered that." The record further shows various transactions and dealings running through several years with respect to mules, oxen, and other personal property, etc., between the testator and Hitt.

The will was never probated, for the reason that the probate was intercepted by *caveat* filed by the contestants. The record also shows that Hitt had paid all the bills and looked generally after the business of the testator as though it was his own after the will was made, although at that very time Terry was in fine financial condition, had the very best of credit, and his drafts would have been paid by his commission houses for any reasonable amounts drawn. Appellant, when asked why this was so, said that Terry had asked him to do that for him; and that he did not know whether the request was made because he was not able to attend to his own business; that he (Terry) was certainly able to sign drafts, and that he thought Terry was in condition physically and mentally, to attend to business if he had desired to do so; but that, as a matter of fact, Terry attended to no business whatever, except the execution of that will, after he left his (appellant's) house preparing to go to Baltimore. The issue *devistavit vel non* was made up and tried by a jury in the chancery court. The questions were first, whether the testator was of sound and disposing mind at the time he made the will, and, second,

whether he was unduly influenced by appellant to make the will. A great volume of testimony was introduced on both sides, a summary of which even it would be impossible to set out within the limits of this opinion. Suffice it to say that the testimony in the record in support of the finding of the jury is, in our judgment, most abundantly sufficient. That finding was that the instrument was not the will of the testator, and the decree of the chancellor was in conformity with this verdict; and Dr. Hitt appeals.

Since the testimony in support of the verdict is, as stated, most ample on either issue submitted to the jury, and no reversible error is shown as to rulings on evidence, we shall confine our examination to the criticisms made of the instructions given for the contestants. The reporter is directed to set out all the instructions in this case, on both sides, in full. These criticisms are exceedingly ingenious and display great critical ability; but, in the main, the criticisms must fairly be said to be too technical—to be, in effect, hypercritical. Let us note some of them now in detail:

The second instruction for the contestants is criticised with respect to its statement as to the burden of proof on these issues; but, besides the fact that there was no formal order of probate in this case, it is sufficient to say that all the instructions on both sides with respect to presumptions of one kind or another were wholly irrelevant in the case, since there was the fullest proof offered by both the proponent and the contestants on both the issues involved. That being so, presumptions were of no value to one side or the other, and we could not reverse for any error in instructions on either side as to mere presumptions, when the record discloses full proof on both issues. The suggestion that this instruction directly and inevitably excluded the idea that this will would still be good, though made during a lucid interval, is too far-fetched as to this case as tried by the evidence in this record.

The fourth instruction is criticised because of the use of the

language that: "If the jury believe from the evidence that the testator had in any degree lost any of his mental powers, or that his mind was then in any way impaired, it is the duty of the proponent to prove," etc. Of course, abstractly considered, this is an incorrect statement of the law; but whatever error there may be in it is fully cured by the most careful and complete instructions given for the proponent, drawn in the most positive and emphatic language, on this very point. Another criticism of this instruction is that it states that the testator should have known the contents of his will, and yet the proponent himself uses language practically identical in instruction No. 6, in which the court instructed, for him, that the testator should know the provisions of his will, and in various others instructions that the testator should understand his will. Both sides asked the court to instruct the law the same way, therefore, on this proposition. Another criticism of this instruction is that it uses the language that the proponent was required to prove to the jury "by a clear preponderance of the evidence," etc.; and certain authorities are cited which do criticise this expression, for example, *French* v. *Day,* 89 Me., 441, 36 Atl., 909, which styles such an expression as "equivocal and mischievous." But this court, in *Chambers* v. *Meaut,* 66 Miss., 625, 6 South., 465, holds that the phrase is unobjectionable. In any view it seems to us that the use of this phrase could have had no applicable effect upon the jury in reaching their verdict. The plain men who occupy the jury box do not deal in metaphysical subtleties in weighing instructions, nor do they trouble themselves in balancing nicely differing phrases which may be used by those who draw the instructions for them; and it is fortunate for the practical administration of justice that they do not lose · themselves in a metaphysical fog about terms and phrases, but apply the instructions given them by the court in a common-sense fashion to the case as made by the facts.

The fifth instruction for the contestants is criticised because it tells the jury that they may take into consideration the un-

naturalness of the will; but the proponent himself secured an instruction using exactly the same words, to-wit, No. 11, in which the court told the jury: "That even though it may appear from the evidence that the alleged last will and testament of the said R. W. Terry, deceased, is unreasonable, unnatural, and unjust to his family, or some of them, or however unreasonable, unnatural, or unjust they may think the will to be, still they must uphold the will, if notwithstanding they believe from the evidence that the said R. W. Terry had testamentary capacity and was not unduly influenced at the time of the execution of the will." Here, again, both sides use the same word and indulge in the same assumption that the will in its terms is, in ordinary acceptation, an unnatural will. There is no rule of law that a will, which, as counsel say, "on its face otherwise indicates intelligence and clarity of mind, is to be condemned as either unnatural or unreasonable, for the reason solely that the property of the testator is left to persons other than the brothers, sisters," etc. That may be perfectly true; but that is not this case, and the instruction deals with the case in hand. There is much more here than merely such a provision in the will. There is evidence showing that the terms of it are unnatural, in view of the relationship of the parties and the state of feeling between the testator and the relations that theretofore existed; that is, before the execution of this will and up to its execution. The jury had a right to determine the unnaturalness or unreasonableness of the provisions of the will from the provisions looked at in the light of the testimony in the case—not from the provisions alone. Counsel say the court "badged the will as being unnatural"; but, if it badged it so in the charge for the contestants, it certainly so badged it in the charge, above referred to, for the proponent. Counsel feel the stress of this answer, because they say that the serious objection to this instruction, on this point, was that the court undertook to tell the jury that it was unnatural, and *did not commit to the jury the determination as to whether it was or was not in*

the light of the evidence; but it is to be noted that in the very same instruction the court adds, "if such they believe to be the fact from the evidence in the case," and this phrase relates, we think, to the whole charge, and not merely to that part of it to which counsel seek to limit it. And, in addition to that, as stated, if the unnaturalness of it was assumed in this charge, equally was it to be assumed in the charge, above referred to, given for the proponent, to all of which it may be added that if the charge was in any way erroneous for speaking of the unnaturalness of the will, we would certainly not hold it reversible error on the facts of this record. The remaining criticisms of this charge, we think, are too technical and not practically well founded. They are hypercritical.

The sixth charge for the contestants is vigorously assailed for several reasons. One of these is that the court told the jury therein that, "where such physician occupies also in respect to his patient a position of personal friendship and confidence, bestowed upon him by the patient, the presumption of law is that such physician has exerted over his patient an undue influence; and such presumption of law also exists, whether the relation of friendship and confidence exists or not, and such presumptions are of evidential value." Counsel say that this is a charge on the weight of evidence, because it says that such presumptions are of evidential value; that the court did not content itself with saying that the jury should consider such presumptions, but that they were valuable as evidence. Now, curiously enough, the identical phrase is asked and given for the proponent, with respect to his presumptions, in charge No. 9, wherein the court told the jury that "the law presumes, in the absence of confidential relations, that the act of the alleged testator in the making and executing of the said will was free and voluntary, and that the presumption is of evidential value." Another instance of both sides asking the same principles of law, and in identically the same language; and yet counsel for the proponent complain of the contestants for asking the court

to charge the jury in the very same language in which they asked the court to charge the jury, and about the very same thing, or a similar thing.

Again, the ninth instruction is criticised because it tells the jury that the testator must have been wholly uninfluenced, when it should have told the jury that the testator must have been unduly influenced, etc. Now, the proponent got from the court charges Nos. 4, 6, and 11, in which the court expressly told the jury that the proof must show that the testator had been unduly influenced in order to set aside the will, and this same principle is repeated over and over in the charges for the proponent. The omission in charge No. 9, for the contestants, is therefore fully cured. The instructions, on any point, must be taken as a whole, and the law deduced from all instructions on the same point, so construed, taken as a unit. It will not do to pick out, with the pincers of a sharp and keen criticism, minor errors and omissions here and there in instructions, and hold them up in bold relief, and, shutting our eyes to all else, look at those defects, and so determine whether a case should be reversed or not. Possibly not one case in a thousand, tried by an appellate court, could stand the test of such acute analysis; and certainly not one jury in a thousand is ever controlled, in reaching its verdict, by any of these errors occurring here and there in instructions on one side or the other, where they can gather satisfactorily from the whole body of instructions a correct view of the law on any particular point; and an appellate court, in determining whether cases should be reversed on account of errors sought to be pointed out in instructions, should be governed by this practical consideration, rather than by mere fact that here and there some errors may be pointed out. It is never a question of error; but the question is whether, on all the instructions, there stands out, clearly and manifestly, reversible error. Justice is the object of all judicial determinations, and all the course of the trial, below and above, should be addressed to securing justice.

So, again, the tenth instruction for the contestants is criticised in the same way, because the court tells the jury that if Hitt was the medical adviser and physician of Terry at the time the will was drawn, and that the fact that he was Terry's physician in any way influenced Terry, etc. All this, as shown, is abundantly cured by the instructions for the proponent, which were clear, full, and explicit on this particular point. See instructions Nos. 4, 6, and 11, especially No. 6, last part, for proponent. Counsel most earnestly insists that this instruction does not inform the jury that relationship raises a presumption which must be rebutted, but, according to the plain language of it, that the bare existence of the relationship and the bare fact that such relationship moved the testator to give the legacy are the *"Alpha* and *Omega* of the argument." Once more we reply that we do not think this instruction means that, and that, if it did, it is cured by proper instructions, clear and full, for the proponent on the precise point. See instructions Nos. 7 and 9 for proponent.

So the eleventh instruction for the contestant is, we think, hypercritically assailed. Of course, Hitt's writing the document on his own typewriter had nothing on earth to do with the validity of the will, and yet that is dealt with as if it was literally what was meant. What was meant was that Hitt's writing it on his own typewriter showed that it was done in his house, and not at the home of Terry. The reference to the typewriter as being Hitt's own surely meant nothing more than to point out that fact as one of the elements showing the circumstances under which the will was written. This sort of hypercriticism will not do for the practical administration of justice. If learned counsel representing appellants in this court, and seeking reversal because of instructions alleged to have been fatally erroneous, would take the instructions on both sides as a unit and apply the magnifying glass to their virtues, rather than the microscope to their defects, it is very likely there would be far less complaint of merely technical errors.

We have already replied to the criticisms of the seventeenth instruction with respect to the knowledge of the contents of the will, etc., in our remarks as to other instructions above.

The observations already made apply, also, to the nineteenth instruction for the contestants. The word "conclusive" is not used in that instruction, nor is it meant that the presumption referred to was conclusive.

In respect to the twentieth instruction it is sufficient to say that there is certain evidence in the record with respect to delusions under which the testator is supposed to have labored. The instruction is of no value one way or the other in the case, and could have in no possible way influenced the jury. The jury could not have been led, by any consideration of this trifling incident in the progress of the case, so as thereby to have lost sight of the real issues presented on nineteen-twentieths of the testimony in the case.

We have so far omitted to refer to the only serious criticism of any of these instructions, so far as we understand the criticism and the instructions to which it applies; and that criticism may be dealt with by referring to the sixth instruction for the contestants, which was assailed in the first place, as other instructions for the contestants are assailed, upon the ground that it announced an incorrect proposition of law with respect to the relations between physician and patient. The principle announced in respect to this matter by the instructions for the contestants was, in substance, that the law presumes that, where a will or deed is made by a patient to his physician, to the exclusion of those to whom, ordinarily, his property would go, no reason existing why such exclusion of relations should occur, the law raises the *prima facie* presumption that the will is void on grounds of public policy; in other words, that in those conditions in life in which confidential relations exist between parties, such as attorney and client, physician and patient, etc., the law presumes deeds or wills made by the client to the attorney, or the patient to the physician, to be *prima facie* void,

and therefore requires such beneficiary under the will to show the absence of undue influence and the like, and this doctrine, in its application both to wills and deeds, is laid down in the most positive and emphatic fashion in *Meek and Thorton, Ex'rs, v. Perry and Wife,* 36 Miss., 190. Counsel confesses this, but contends that it was decided forty-nine years ago by a divided court, and has never been reaffirmed in this state. On this proposition we have merely to say that we do not feel warranted in overruling this decision, if we doubted the soundness of the conclusion, by which we do not mean to say that we do doubt the soundness of the conclusion; inded, we think it is correct. Besides it is to be observed, further, so far as the dissent of Mr. JUSTICE HANDY is concerned, he agreed entirely with the general rule announced by the majority of the court, and from which counsel for defendant dissent, and rested his dissent exclusively on the ground that the rule should only be applied in those cases in which there had been prior dealings between the beneficiary and the devisor, or the grantor and the grantee. At page 266 Judge Handy says: "But when we attempt to apply the rule to cases where the parties have not dealt together, where no transaction has taken place between them, or where the beneficiary has not been active in procuring the act which conferred the benefit, it appears to be evident that the force of the rule fails. It cannot apply, because, not being a party to the transaction which conferred the benefit, it cannot with reason be expected that with any precaution he could be prepared to explain the circumstances attending it. He cannot be required to explain a matter in which he had no participation, and which may have been done wholly without his knowledge. To apply the rule to such a case would be almost inevitably to condemn the act absolutely, and that upon the unjust reason that he acted unfairly in a matter to which he was not a party."

In the case we have in hand there had been many years' dealings, prior to the execution of this will, between Dr. Hitt and R. W. Terry, so that Judge Handy's opinion sustains our view

of this case on its particular facts. Counsels' position is this: That the law raises no such presumption from the mere fact that such a deed or such a will has been made. Suppose that proposition be granted, and suppose the principle announced in *Meek* v. *Perry* is, in its strictness, unsound; how could that in any possible way affect this case, in which the testimony overwhelmingly demonstrates that not only is there such a will in this case, but that the will was procured by the active influence of the appellant over the testator, who was, at the time, not of disposing mind? The trouble with the case for the appellant is that it fails wretchedly on the facts. It falls below any possibility of securing a reversal, because there could not have been any other verdict properly rendered on the testimony in this record.

It follows, from these views, without further protracting this opinion, that the verdict of the jury was correct; and the decree of the court below is affirmed.

*Affirmed.*