CROFT *v.* ALDER.

No. 41278 November 16, 1959 115 So. 2d 683

*Holcomb & Curtis,* Clarksdale; *Ben M. Caldwell,* Marks, for appellants.

*Lomax B. Lamb, Jr.,* Marks, for appellee, Barney L. Alder.

*E. C. Black,* Marks; *G. Howard Nevils,* Tazewell, Tenn.; *Blanchard S. Tual,* Memphis, Tenn., for appellees, Mary Ann Alder, et als.

ETHRIDGE, J.

This is a will contest, in which for purposes of disposition of the case we consider two issues: (1) Whether the evidence shows that the principal beneficiary was in a confidential and fiduciary relationship with testator at the time of execution of the will; and (2) if so, whether proponents met their burden of proof of showing by clear and convincing evidence that the will was not the product of undue influence upon testator as a consequence of such confidential relationship. The Chancery Court of Quitman County upheld the will. However, we have concluded that the undisputed evidence shows that the confidential relationship existed, and proponents-appellees wholly failed to show that the will was not the result of undue influence in the confidential relationship. Hence the decree of the trial court is reversed, and judgment is rendered here for appellants, adjudicating that the 1957 will is invalid and void.

I.

John J. Alder had lived in Quitman County many years, and since 1932 lived upon his 110-acre farm. He was exceptionally devoted to and dependent upon his wife, Mrs. Flora Hines Alder. They had no children.

She died on September 1, 1954. Mr. Alder was then 85 years of age and in poor health. In addition to the normal effects of old age, he had had several major operations and illnesses. Apparently, his next of kin were a sister, Mary Ann Alder of Sneedville, Tennessee, a brother, Henry Alder of Blue Ridge, Texas, and a nephew, Barney L. Alder of Chattanooga, Tennessee. John J. Alder was reared as a child in Tennessee, but moved to Mississippi when he was a young man. He was fond of his wife's nephews, the appellants Hubert, Andy and Billy Hines, minors, the sons of Dr. Wirt A. Hines of Starkville, Mississippi, and of his wife's grand niece, Mary Ann Croft, a minor appellant, all of whom were complainants in the trial court, contesting the validity of John J. Alder's will of March 18, 1957. Mr. Alder had told Dr. Hines and his wife on several occasions that he and his deceased wife during her lifetime had jointly accumulated their properties, consisting of the farm, a bank account, stocks and bonds, and that he wanted the four children referred to above, the appellants, to have for their education some of his estate when he died.

On June 4, 1955, John J. Alder executed a will which left all of his property to the Citizens Bank & Trust Company of Marks, Mississippi, as trustee, with directions that the trustee sell and convert into cash his property, and thereafter distribute the proceeds as follows: To his sister Mary Ann Alder, 20 per cent; to his nephew Barney L. Alder, 20 per cent; to each of the minor appellants, 10 per cent; and to the Marks Methodist Church, 20 per cent. This will was placed by John J. Alder in his safety deposit box in the Citizens Bank & Trust Company of Marks. No one else had access to this box. The 1955 will was found there after his death.

The will which is the subject of contest in this case was executed by testator, John J. Alder, on March 18, 1957, while in bed and a patient at the Coahoma County

Hospital at Clarksdale. It bequeathed and devised to the Citizens Bank & Trust Company of Marks and Barney L. Alders, as trustees, all of testator's real and personal property, with directions to sell the same and distribute the proceeds as follows: $500 to the Marks Methodist Episcopal Church; 25 per cent to Mary Ann Alder; 25 per cent to his brother Henry Alder; and 50 per cent to Barney L. Alder. Item IV of the will state: "I have directed that 50 per cent of the proceeds of my estate be paid to my nephew, Barney Alder, and my reason for so doing is that he has assisted me in my business affairs for several years past, and has recently been looking after me personally, and has made several trips from his home in Chattanooga to Marks, Mississippi, to look after me and to assist me in my business affairs, and is now taking care of me, and I feel that he is entitled to a larger share of my estate than my brother and sister." The will was witnessed and attested by E. C. Black, an attorney of Marks, and by Johnie Burdine.

After testator's death on February 3, 1958, the will of March 18, 1957, was probated in common form upon the affidavit of E. C. Black as attesting witness. Thereafter the appellants filed in the Chancery Court of Quitman County their bill of complaint attacking the validity of the will of March 18, 1957. The bill alleged that it was invalid because (1) it was not properly executed, since testator at the time was not of sound and disposing mind; (2) it was not attested by two or more credible witnesses in the presence of the testator, as required by Miss. Code. Sec. 657; (3) it was the result of undue influence imposed upon testator by Barney L. Alder; and (4) it was the result of fraud, deceit and duress perpetrated upon testator by Barney L. Alder. The bill further averred that the true last will and testament of John J. Alder was the one dated June 4, 1955, and it would be offered for probate when the court declared the 1957 will void.

The defendants Barney L. Alder, individually and as co-executor and co-trustee of the will, Mary Ann Alder, and Henry Alder by their answers denied the allegations in the bill of complaint. Defendant Citizens Bank & Trust Co. of Marks, as co-executor and co-trustee, in its answer neither admitted nor denied the grounds of the suit, but denied complainants were entitled to any relief. The answer of the Marks Methodist Church admitted the allegations of the bill. All parties waived a jury trial and agreed for the issues to be tried by the chancery court. After the trial, the chancellor rendered an oral opinion, in which he found that testator was of sound mind, and the will was properly attested and was not void because of undue influence or fraud by Barney L. Alder. The chancellor stated that he could not ''find any testimony in the evidence that's been introduced'' to indicate that John J. Alder's will was executed while he was under the undue influence of Barney L. Alder; that one might imagine it as a possibility, ''but there is no where in the testimony that he exercised any undue influence so far as the court can see . . . We've got to have proof and we don't have it here.'' With reference to fraud and deceit by Barney, there must be ''strict proof and positive proof,'' and there is no evidence ''to substantiate those charges.'' The final decree adjudicated that complainants were not entitled to the relief sought in their bill and contest, dismissed the bill with prejudice, and held valid the will of March 18, 1957.

## II.

 █ After careful consideration of the record, we have concluded that the learned trial court was in error in upholding the will. The apparent reason for this was the failure of the chancery court to apply to the undisputed facts the well-established principle of law that, where a confidential relation exists between a testator and a beneficiary under his will, and the beneficiary has

been actively concerned in some way with the preparation or execution of it, the law raises a presumption that the beneficiary has exercised undue influence over the testator, and casts upon the beneficiary the burden of disproving undue influence by clear and convincing evidence.

94 C. J. S., Wills, Sec. 239, pp. 1091-1096, states the rules as to a presumption of undue influence arising from the existence of a confidential relation between a testator and beneficiary under a will: "... the generally accepted rule is that a presumption of undue influence is not raised and the burden of proof, is not shifted by the mere fact that a beneficiary occupies, with respect to the testator, a confidential or fiduciary relation, such as that which exists with respect to a doctor or a physician, guardian, religious and spiritual adviser, employer, landlord, or a close business relation, such as that of partner, principal, or confidential business manager, although the existence of such a relationship may demand a close judicial scrutiny.

"On the other hand, it is the general rule in practically all jurisdictions that undue influence is presumed and the burden of proof shifted so as to require the beneficiary to produce evidence which at least balances that of the contestant, when, in addition to the confidential relation, there exist suspicious circumstances, such as the fact that the beneficiary or person who benefits by the will took part or participated in the preparation or procuring of the will, or actually drafted it or assisted in its execution."

57 Am. Jur., Wills, Secs. 389, 390 state that, although the mere existence of confidential relations between a testator and a beneficiary under his will does not raise a presumption that the beneficiary exercised undue influence over the testator, as it does with gifts *inter vivos,* such consequence follows where the beneficiary "has been actively concerned in some way with the prepara-

tion or execution of the will, or where the relationship is coupled with some suspicious circumstances, such as mental infirmity of the testator;" or where the beneficiary in the confidential relation was active directly in preparing the will or procuring its execution, and obtained under it a substantial benefit. 2 Page on Wills (3d ed., 1941), Sec. 818, discusses in detail these two rules with reference to gifts *inter vivos* and wills. See also Anno., 66 A. L. R. 228 (1930); 154 A. L. R. 583 (1945).

This general rule has been uniformly recognized and applied in Mississippi. Meek v. Perry, 36 Miss. 190, 243, 244, 252, 259 (1858), is perhaps the leading case. It involved a will by a ward leaving a substantial amount of her property to her guardian. The Court held that the presumption of invalidity applies to wills as well as deeds. It was said the law watches with the greatest jealousy transactions between persons in confidential relations and will not permit them to stand, unless the circumstances demonstrate the fullest deliberation on the part of the testator and the most abundant good faith on the part of the beneficiary. Hence the law presumes the existence of undue influence, and such dealings are *prima facie* void, and will be so held "unless the guardian show by clearest proof" that he took no advantage over the testator, and the *cestui's* act was a result of his own volition and upon the fullest deliberation.

Hitt v. Terry, 92 Miss. 671, 697, 707, 710-712, 46 So. 829 (1908), involving a devise from a patient to his physician, followed Meek v. Perry.

*Meek* and *Hitt* were followed in Ham v. Ham, 146 Miss. 161, 173, 110 So. 583 (1926). The conveyance was by deed in *Ham*. The grantor and the grantee were brothers and partners in business. Grantor was in failing health and had a great affection for and reliance upon the grantee. The Court said: "The rules govern-

ing gifts, conveyances, etc., between parties to such a fiduciary relation are the same as those governing gifts, conveyances, etc., between parties occupying the conventional fiduciary relations, such as physician and patient, attorney and client, guardian and ward, trustee and *cestui que trust*, etc.

" 'It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and duties involved in it need not be legal, it may be moral, social, domestic, or merely personal.' 2 Pomeroy Equity Jurisprudence (4th Ed.), section 956.

"When such a relation exists, and the parties thereto—'consciously and intentionally deal and negotiate with each other, each knowingly taking a part in the transaction, and there results from their dealing some conveyance or contract or gift, . . . the principle literally and directly applies. The transaction is not necessarily voidable, it may be valid, but a presumption of its invalidity arises which can only be overcome, if at all, by clear evidence of good faith, of full knowledge, and of independent consent and action.' 2 Pomeroy Equity Jurisprudence (4th Ed.), section 957.

"The burden of overcoming this presumption is on the party claiming under the conveyance, contract, or gift. Meek v. Perry, 36 Miss. 190; Hitt v. Terry, 92 Miss. 710, 46 So. 829.

". . . The evidence fails to disclose that when he executed the deed, C. M. Ham had full knowledge of the value of the property conveyed, of the relation of the consideration therefor thereto, and that it was executed of his own independent consent and action.

"The usual method of proving independent consent and action in such cases, and probably the only way it can be clearly proven, is by showing that in making

the deed the grantor acted on the advice of a competent person, disconnected from the grantee and devoted wholly to the grantor's interest. . . .

"Instead of dismissing the appellant's bill, the court below should have granted the prayer thereof."

The *Ham* case has been followed in a large number of subsequent decisions, including Bourn v. Bourn, 163 Miss. 71, 140 So. 518 (1933); Hickey v. Anderson, 210 Miss. 455, 49 So. 2d 713 (1951); and McElveen v. McElveen, 103 So. 2d 439 (Miss. 1958). *McElveen* cited with approval and followed the principles stated in *Meek, Hitt* and *Ham.*

In summary, the rule applied in the case of gifts *inter vivos,* as by deed, that where a confidential relation exists between donor and donee, it is presumptively void and the burden rests on the donee to produce a clear and convincing evidence that the gift is free from the taint of undue influence, is not applicable in that limited sense to bequests or devises made by will. But where the beneficiary in the confidential relation has been actively concerned in some way with the preparation or execution of the will, it is a well-settled rule that the will is presumptively void as a product of undue influence by the one in the confidential relation. Anno., 66 A. L. R. 229, (1930); 154 A. L. R. 584 (1945). And, when the presumption of invalidity exists, the rule established in this state is that the beneficiary must show by clear and convincing evidence the fullest deliberation on the part of the testator and the most abundant good faith on the part of the beneficiary, taking no advantage of his influence over testator or of his superior knowledge; and that the testator's act was the result of his own volition and upon the fullest deliberation. As defined in *Ham*, the presumption "can only be overcome ... by clear evidence of good faith, of full knowledge, and of independent consent and action;" and the usual method of proving the latter is by show-

ing that the testator "acted on the advice of a competent person, disconnected from the grantee and devoted wholly to the grantor's interest."

■■ Moreover, even where there is no presumption of undue influence, the burden of proof rests upon the proponents throughout, and never shifts to the contestants, both on undue influence and mental incapacity. Cheatham v. Burnside, 222 Miss. 872, 77 So. 2d 719 (1954). ■■ From its very nature, evidence to show undue influence must be largely circumstantial. Undue influence is an intangible thing, which only rarely is susceptible of direct or positive proof. As was stated in Jamison v. Jamison, 96 Miss. 258, 51 So. 130 (1910), "the only positive and affirmative proof required is of facts and circumstances from which the undue influence may be reasonably inferred."

### III.

■■ The evidence clearly shows that Barney L. Alder was in a confidential relation with the testator. Item IV of the will, quoted above, recognizes that. It states that Barney has been assisting testator in his business affairs "for several years past, and has recently been looking after me personally . . . and is now taking care of me, . . ." This will was prepared by Mr. Black with "data and information" given him by Barney, who said John J. Alder requested him to deliver it to Black. Black said that Barney also gave him at the time a copy of the 1955 will. Manifestly Barney was aware of this Item IV in the will.

Barney made frequent trips to Mississippi from Chattanooga to assist John J. Alder in his business and personal affairs, after his wife died in 1954. For at least two years prior to the date of the will, Mr. Alder was in very poor physical condition and health, his memory was poor, and he was very emotional and feeble. F. D. Tutor, who lived near the testator's farm, said that

after Mrs. Alder's death Barney came down frequently. Whenever Mr. Alder got sick he usually wanted Tutor to call Barney, and on other occasions when he was sick, Tutor called Barney on his own initiative. John J. Alder, at the time he executed the will of March 18, 1957, was suffering from disabilities more or less common to a person 87 years of age. He was sick physically, and was forgetful and absent-minded. After he entered the hospital, and was confined to bed, Barney came down from Chattanooga. He had in his possession a copy of the will of June 4, 1955. At the request of Barney, who stated he was acting for Mr. Alder, Mr. Black prepared the 1957 will. Testator signed it in bed in the hospital, in the presence of Black and Burdine, both of whom signed as attesting witnesses. Mr. Black said he read the will to testator, who told him that was what he wanted in it. Testator signed it, following which Barney and he attested it. Mr. Alder insisted at the same time on paying Black his fee, so Barney wrote out a check for the amount and Alder signed it. Black was of the opinion that testator had sufficient mental capacity to execute the will and to transact other business at the time. Burdine's testimony was confused and ambiguous. The only persons in the room when the will was signed were Black, Burdine and Barney L. Alder.

In brief, the record undisputedly shows that at the time Mr. Alder signed the will of March 18, 1957, and for some time prior thereto, a confidential relation existed between him and Barney L. Alder, the principal beneficiary under his will. The record also reflects clearly that Barney was actively concerned in several respects with the preparation and execution of the will. For these reasons, a presumption was raised, under the well-established rules discussed above, that the beneficiary, Barney L. Alder, exercised undue influence over testator in the making of the 1957 will. Hence, under the settled equity rule, Barney was re-

quired to show by clear and convincing evidence that the will was not the product of undue influence by him upon Mr. Alder, but that it was a free and considered act by the testator; and the presumption of its invalidity could be overcome only by clear evidence of good faith, of full knowledge and of independent consent and action. Appellees wholly failed to meet these standards of proof in order to establish the will as valid. In fact, the evidence indicates the contrary.

The able and respected attorney who prepared the will upon data furnished him by Barney, who stated he was acting for Mr. Alder, testified that, in his opinion, the testator was mentally competent and the instrument reflected testator's independent purpose. However, the record indicates that the witness had not conferred with Mr. Alder about the will prior to its drafting. Moreover, his testimony does not negative the presumption of undue influence resulting from "antecedent agencies" and prior actions by the principal beneficiary who was in the confidential relation. In Jamison v. Jamison, 96 Miss. 288, 298, 51 So. 130 (1909), it was said: "The difficulty is also enhanced by the fact, universally recognized, that he who seeks to use undue influence does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to the fact. He observes, too, the same precautions if he seeks by cajolery, flattery, or other methods to obtain power and control over the will of another, and direct it improperly to the accomplishment of the purpose which he desires. Subscribing witnesses are called to attest the execution of wills, and testify as to the testamentary capacity of the testator, and the circumstances attending the immediate execution of the instrument; but they are not called upon to testify as to the antecedent agencies by which the execution of the paper was secured, even if they had

any knowledge of them, which they seldom have." Fortner v. Coins, 114 So. 2d 759 (Miss. 1959).

We do not think that the testimony of the attorney who attested the will, as to his observations at that particular time, can suffice to rebut the already existing presumption. As stated in *Jamison*, he naturally would have had no knowledge of any precedent activities by Barney.

On the day after the will was executed, Barney L. Alder negotiated the sale of testator's 110 acre farm to F. D. Tutor and wife for $5,000 cash and $35,000 in deferred payments over eleven years, with grantor reserving the right to occupy and use the residence and garage for his life. He was then 87 years old. Tutor said that Mr. Alder discussed with him on several occasions selling his place but he did not talk with him after he went to the hospital. Barney told him that while he was down there, Mr. Alder stated he wanted to go through with the sale; that there were two persons who had indicated interest, and he wanted to get their bids. Mr. Alder executed the deed in the hospital on March 19, 1957. It was prepared by Tutor's attorney, and the sale was closed in Black's law office. The will executed the day before directed the trustees to sell the farm. On March 25 Mr. Black mailed to Barney L. Alder for John J. Alder, the eleven notes, the deed of trust, and Tutor's check for $5,000.

Around March 25 John J. Alder was released from the hospital, and went to Chattanooga with Barney. On March 28, 1957, the $5,000 Tutor check was deposited in the Hamilton National Bank of Chattanooga, Tennessee, to the newly opened joint account of "John J. Alder or Barney L. Alder." On April 2 another $5,000, which was withdrawn by Mr. Alder from his account in the Bank of Clarksdale, Mississippi, was also deposited in this joint account. From April 11 though July 16, 1957, an additional $766.86 of Mr. Alder's funds

were deposited to this joint account. Appellee Barney L. Alder made withdrawals from this joint account from April 9 through December 12, 1957, in varying amounts, including $7,500 on April 12, $1,000 on April 29, and $1,522.28 on May 24. On December 12, 1957, the balance was $194.40. The $7,500 withdrawn by Barney April 12 was used by him to purchase U. S. Treasury Bonds, which he had issued in the name of "Barney L. Alder or John J. Alder."

Barney L. Alder had a personal account in the Pioneer Bank of Chattanooga. On April 8, 1957, John J. Alder drew a draft for the balance of his savings account in the Citizens Bank & Trust Company of Marks, Mississippi, in the amount of $10,125.25. On April 12, 1957, this sum was deposited to the personal account of Barney L. Alder in the Pioneer Bank, upon the direction of Mr. Alder to a bank officer in the presence of Barney. Barney withdrew from this account on June 8, 1957, the sum of $1,500, on June 17, $5,000, and on February 18, 1958, fifteen days after testator's death, $1,500. On July 1, 1958, there remained in this account $709.60, approximately the same balance which was in it immediately prior to the deposit of April 12, 1957.

John J. Alder left Chattanooga in April 1957 and went to Sneedville, Tennessee, to visit his sister, Mary Ann Alder. He requested Mrs. Martha B. Collins, Vice-President and Cashier of the Citizens Bank of Sneedville, Tennessee, to get a bank statement from the Hamilton National Bank. She was advised that Barney L. Alder had purchased $7,500 in U. S. Treasury Bonds from the joint account, and had them issued in the name of "Barney L. Alder or John J. Alder." When Mrs. Collins told him about this, Mr. Alder said, "Aw, I did not tell Barney to do that."

Mary Ann Alder, testator's sister, said that he visited her in Sneedville from about April 10 to June 30, 1957, and the condition of his mind and memory was "excel-

lent;'' that he told her he wanted Barney to have more than his other relatives because he had helped to take care of him. He said nothing of the transfers of his funds to Chattanooga, but stated Barney wanted him to help buy a home in Chattanooga and live with him. Mr. Alder also told her ''he had educated Barney and did not know whether or not he had made a mistake, and that he was going back down (to Mississippi) to see about his property.''

Mr. Alder returned to Mississippi in July 1957. He was very much upset about the sale of his property to Tutor. Tutor said that Mr. Alder told him he did not remember selling the place to him, but he finally remembered it.

Clausen Peden, Chancery Clerk of Quitman County, testified that in the late summer or early fall of 1957 Mr. Alder came in his office and told him he had not sold his place to anyone. Peden showed him the record of the deed and deed of trust. Alder did not remember them and was pretty upset.'' Dr. V. D. Franks, an old friend and personal physician of testator, said that in the fall of 1957 John J. Alder told him that he understood he had sold his place, and he remembered ''signing something in the hospital but he didn't know what it was.'' He was very bitter about the whole thing. Mr. Alder told Dr. Franks about Barney's getting him to transfer his money to Chattanooga, and stated that he was going to see a lawyer to find out where his money went and his papers were.

P. M. Self, an old friend, advised testator in 1956 not to accept an offer of $600 an acre for his farm. In the Fall of 1957, he asked Self if he ''had heard about them taking his land away from him.'' Mr. Alder became very upset, had an ''attack,'' and became sick.

In September or October, 1957, Mr. Alder got in touch with Pat D. Holcomb, an attorney of Clarksdale. He inquired of E. C. Black about the sale of the farm

to Tutor. On November 4, 1957, Mr. Black advised Holcomb that on March 25, 1957, he sent to Barney L. Alder for John J. Alder the notes, the deed of trust and Tutor's check for $5,000, and Barney had acknowledged receipt of these documents, stating he had placed them in a lock box in a Chattanooga bank. Black's letter observed that Mr. Alder's memory was poor; he had trouble keeping the transaction in mind; but after thinking it over he remembered it.

In 1956 John J. Alder rented a safety deposit box in the Hamilton National Bank of Chattanooga, with Barney authorized to enter it. In November 1957 he directed the bank to send the contents of that box to his attorney, which was done. Mr. Holcomb turned these stocks, bonds and securities over to the estate after testator's death.

The record does not reflect what disposition Barney L. Alder made of the cash funds belonging to Mr. Alder, which Barney drew out of the Hamilton National Bank, except that he purchased with part of them a $7,500 U. S. Treasury Bond, which he had made payable to him or Mr. Alder. Appellees did not show what disposition Barney made of the $10,125.25 belonging to Mr. Alder which was deposited in Barney's personal account in the Pioneer Bank on April 12, 1957, and which was withdrawn by Barney. This appellee, standing in a confidential relation with this very elderly, ill, and forgetful man, wholly failed to account for his use of of these funds belonging to John J. Alder. The record is silent as to this fiduciary's use and disposition of this considerable sum of money, which Barney obtained from testator within a few weeks after he executed the 1957 will.

Appellees wholly failed to rebut the presumption that Barney L. Alder procured the 1957 will through undue influence over the testator. Certainly, there is no clear and convincing evidence to show that the testator acted

free of this fiduciary's influence, and with a deliberate and independent purpose of his own. Appellees' evidence falls far short of the standards required to rebut the presumption of undue influence by one in a confidential relation. In fact, the evidence reflects the contrary. Hence the decree of the chancery court is reversed, and judgment is rendered here for the appellants, adjudicating that John J. Alder's will dated March 18, 1957, is invalid and void. Because of this disposition of the case, we do not reach the other questions raised by appellants concerning mental incapacity and proper attestation by witnesses.

Reversed and judgment rendered here for appellants.

*McGehee, C. J.,* and *Hall, Arrington,* and *Gillespie, JJ.,* concur.