RITTER, PROPONENT OF THE THIRD AND LAST WILL OF HIS WIFE, MRS. VIRGINIA PEARL RITTER, DECEASED *v.* JOHNSON, et al.

No. 41524 October 17, 1960 123 So. 2d 617

*Murray L. Williams, Horan & Horan,* Water Valley, for appellant.

*Carothers & Fedric, Mitchell M. Lundy,* Grenada; *John S. Thorp, Jr.,* Water Valley, for appellees.

McGEHEE, C. J.

On August 24, 1954 the testatrix, Mrs. Virginia Pearl Ritter, executed what purported to be her last will and testament. In that will she left the appellant, her husband, Charles L. Ritter, the sum of $1, and made a bequest to the First Methodist Church of Water Valley, Mississippi in the sum of $1,000, and left the remainder of her estate to her sister, Mrs. W. E. Johnson, if liv-

ing, but provided that if her said sister predeceased her, the residue of her estate should go to her neices and nephew, Mrs. Garvis Erwin, Mrs. Chessie Triplett and Mel Lamar, in equal parts, and appointed Earl K. Fly as executor of the said will.

On January 10, 1959 the testatrix executed another will in which she devised and bequeathed unto the appellant the sum of $1, and left to the First Methodist Church of Water Valley, Mississippi the sum of $2,000 and made certain bequests to other churches and to the Methodist Orphanage in Jackson, Mississippi the sum of $5,000, and also left certain bequests to named relatives who were not mentioned in the will of August 24, 1954. In this will she named Mrs. Evelyn L. Dickinson of Grenada, Mississippi as her executrix.

On February 12, 1959, eleven days prior to her death of cancer, she executed another purported will while in the hospital at Grenada, Mississippi, leaving to the appellant ''all of my entire estate, real, personal and mixed of every kind and character wherever located, to my husband, Charlie L. Ritter * * *, except, however, I desire that my sister, Mrs. W. E. Johnson, have a child's part for such amount as my executor shall deem fit and proper. I leave this in the discretion of my said husband, Charlie L. Ritter, having complete trust in him.''

The wills of August 24, 1954 and January 10, 1959, respectively, together with the affidavits of the subscribing witnesses were introduced in evidence upon the hearing of the contest of the will of February 12, 1959. This last will was contested on the alleged grounds that: (1) It was not executed in the manner required by law, (2) It was procured by undue influence and (3) The testatrix was not possessed of sufficient testamentary capacity to execute a valid will. Upon this latter issue the testimony was conflicting, and after a careful study of this entire record, we have reached the conclusion that there was substantial testimony to support the finding of the chancellor, holding that the testatrix did

not possess sufficient testamentary capacity to execute a valid will on February 12, 1959, and that his decision in that behalf should be permitted to stand, as not being manifestly wrong.

The chancellor found as a fact on ample testimony that the will was executed in the manner required by law and also that no undue influence was exerted by anyone upon the testatrix to procure the execution of the will. In other words, the only issue of fact left in the case that was expressly passed on by the chancellor is whether or not the testatrix possessed sufficient testamentary capacity to be able to execute a valid will.

 But the appellant makes the further contention that as a matter of law, the appellees did not own such an interest in the estate of Mrs. Ritter to enable them to contest the will in question. However, since the will of February 12, 1959 was held to be invalid because of lack of testamentary capacity, then the beneficiaries under a prior will would have such an interest in the estate as to entitle them to contest the latter will. In the case of Croft, et al v. Alder, et al, 237 Miss. 713, 115 So. 2d 683, the Court said: "The bill further averred that the true last will and testament of John J. Alder was the one dated June 4, 1955, and it would be offered for probate when the court declared the 1957 will void." That is the situation that we have here. The February 12, 1959 will having been declared void on the conflicting testimony, and since we are unable to say that the finding of the chancellor in that behalf was manifestly wrong, one of the prior wills may still be offered for probate.

In 95 C. J. S., Sec. 323, Subsection (3), p. 152, on the subject of wills, holds that a beneficiary or claimant under another will of the same testator has a sufficient interest to entitle him to oppose probate of the will in question, except where the other will under which he claims has been revoked, or where the will in question

bequeaths him the same or a larger amount than was bequeathed in the other will.

In the instant case the two former wills were introduced in evidence, together with the affidavits of the subscribing witnesses. No decree admitting either of these two former wills to probate was introduced, but the executors on behalf of the beneficiaries under both of the former wills filed petitions asking that an issue devisavit vel non be made up and tried according to law, and that a temporary administrator of the estate of the testatrix be appointed. One of the petitions prayed that the appellant, Charles L. Ritter, be enjoined from undertaking to administer the estate as the executor named in the purported will of February 12, 1959. The chancery clerk was appointed as temporary administrator and the trial of the issue of the devisavit vel non was proceeded with.

██ We think that the beneficiaries in one or the other of the two former wills would be entitled to probate the same if their contests of the last will should be sustained.

The proponent of the will of February 12, 1959 offered in evidence the probate thereof in common form, and thereby made out his prima facie case. Thereupon, the contestants introduced their proof on the issues involved, and then the proponent introduced his evidence in rebuttal. This was the proper procedure.

██ The contestants offered the attendant physician to testify on the issue of whether or not the testatrix possessed the necessary testamentary capacity to execute a valid will. The proponent objected to the physician's testifying and his proposed testimony was not admitted because the same was privileged under relation of physician and patient. The proponent had the legal right to prevent the physician from testifying. The contestants could not use his testimony if the proponent objected. In reaching his conclusions as to whether or not the testatrix possessed the necessary testamentary capa-

city to execute a valid will, the chancellor was prevented by the objection of the proponent to hear the testimony of the only expert offered on that issue. The chancellor probably thought that the testimony of the physician was objected to for the reason that the objector was of the opinion that the testimony of this medical witness would have been unfavorable to him.

 The contestants introduced the testimony of a nurse who had been in attendance on the testatrix at the hospital from December 29, 1958 until February 19, 1959 and observed her every day during that period. She was on duty until 7 o'clock on the morning of February 12, 1959 and had been since 11 p.m. of the day before. It was her opinion from her observation of the patient that the latter was not conscious; that she talked at random and incoherently; and that she failed to recognize those who visited her during that period. The administrator of the hospital visited this and other patients everyday, and he stated that from his observation the testatrix was wholly incapable of making a valid will on the date of its execution. Another nurse, who was a registered nurse, testified by deposition and stated that she was engaged on an eight-hour per day shift at the hospital in February 1959 at the time Mrs. Ritter was a patient there; that she "had a chance to observe Mrs. Ritter closely that day (meaning February 12, 1959) and the day before and the day before that" and that in her opinion the testatrix was not in possession of her mental faculties to the extent of being able to validly dispose of her property. This testimony was objected to on the ground that the witness had not stated the facts upon which she based her opinion but the objection was overruled. This objection was perhaps well-taken but there is ample competent evidence from other witnesses to sustain the chancellor's finding.

The administrator of the hospital testified as to Mrs. Ritter's being under heavy sedation most of the time prior to the execution of the will.

Mrs. Mel Lamar, wife of one of the contestants and beneficiaries in the will of August 24, 1954, as a witness on the contest of the will of February 12, 1959, testified that she was at the hospital on the day the said last will was executed and that she arrived there about 9:15 a.m. and remained at the hospital nearly two hours and that Mrs. Ritter did not recognize her and would not talk to her.

On behalf of the proponents the testimony disclosed that Mrs. Ritter on the morning of February 12, 1959 had the nurse then on duty, a Mrs. Sandridge, to fix her hair and get her ready to see her husband, Mr. Ritter, whom the testatrix said she expected to come that day; that Mr. Ritter did come and that Mrs. Ritter told him that a wrong had been done and that she wanted to correct it before it was too late; that she asked the nurse to phone her lawyer but that when the nurse was unable to locate her lawyer the testatrix asked Mr. Ritter to get his lawyer and that according to the testimony of the lawyer who dictated the will, Mr. Ritter brought him a message that Mrs. Ritter wanted him to tend to some business for her. The lawyer asked what the nature of the business was and that Mr. Ritter replied, ''I think she wants you to prepare a will.'' At the request of the lawyer, Mr. Ritter carried him and his stenographer to the hospital where the will was dictated by the lawyer and transcribed by the stenographer, and then read to Mrs. Ritter, and that she stated that it was just what she wanted. The testimony on the part of the stenographer and of the nurse then on duty was to the effect that Mrs. Ritter requested them to witness her signature to the will. She signed the same by mark, the proof showing that she had been suffering some time with palsy, according to their testimony and that they then witnessed the same. Neither the lawyer nor Mr. Ritter was in the room at that time, but the lawyer testified that Mrs. Ritter stated to him that she had made her will and that she felt good and was glad that it had been

done; that the testatrix recognized him and his stenographer when they arrived and that she told him that a wrong had been done and that she wanted to correct it and told him what disposition she wanted made of her property.

The nurse, as a witness for the proponent, conceded in her testimony that Mrs. Ritter asked her while the lawyer and her husband were out of the room, "What are they trying to do to me?"

The appellant contends that more weight should be given to the testimony of the witnesses who were present at the time of the execution of the will than is given to the testimony of other nonexpert witnesses who were not present at the time of the execution of the will, and that the decree of the chancellor appealed from is contrary to the overwhelming weight of the testimony. We have carefully considered this contention in the light of our decisions but we must again announce the rule that the finding of a chancellor on conflicting testimony should not be disturbed unless the same is manifestly wrong, if the same is supported by substantial evidence. Had the chancellor decided this case in favor of the appellant, we would not feel warranted under this record in disturbing his finding but we are unable to say under all the facts and circumstances testified to that his finding of fact in this instance was manifestly wrong.

As to what right the appellant may have to renounce either of the former wills when offered for probate is not now before us since that would depend on the value of his separate estate as to which there is no competent proof in this record. We merely hold that the contestants had such an interest in the estate of the testatrix, under one or the other of the prior wills, to contest the will of February 12, 1959, assuming that his decree is correct in setting aside the will of that date for lack of testamentary capacity. We are of the opinion that the case should be affirmed and remanded for such

further proceedings as may be desired consistent with this opinion.

Affirmed and remanded.

*Lee, Kyle, Arrington* and *Gillespie, JJ.,* concur.