MINGO, et al. *v.* MINGO, EXECUTOR

No. 42466 November 26, 1962 146 So. 2d 742

*Jack H. Young,* Jackson, for appellants.

*Joe N. Pigott,* McComb, for appellee.

McGEHEE, C. J.

Prior to April 20, 1955, Jesse J. Mingo had been a resident of Chicago, Illinois, and his wife became ill and they had moved to Phoenix, Arizona, where the wife of Jesse Mingo soon died. Thereupon Isadore Mingo and William Monroe Mingo were the only two members of Jesse's family who were then living.

The testator then owned one three-story building on South Prairie Avenue in Chicago, Illinois, one three-story building on Calumet Avenue in Chicago, Illinois, and he had purchased a $30,000 mortgage bond secured by real estate in Chicago which he had obligated to pay for within a period of twelve years beginning January 13, 1954, at six per cent interest, and on which bond he was paying the sum of $292.77 each month including both principal and interest.

Upon the death of the wife of testator, his two brothers, William Monroe Mingo, who resided in the State of Oklahoma, and Isadore Mingo, who resided in, McComb, Mississippi, went to Phoenix, Arizona, and attended the funeral of the testator's wife. They induced Jesse Mingo to return to Mississippi and live with Isadore Mingo at McComb, Mississippi. On the journey to Mississippi, William Monroe Mingo stopped at his home in Oklahoma and Jesse continued the journey to McComb, Mississippi, with Isadore to thereafter live with his said brother.

On April 20, 1955, Jesse Mingo, while residing in the home of his brother, Isadore, went to the office of Mr. Joe Pigott, an attorney at McComb, after having sought and obtained the advice of Mr. J. H. Wardlaw as to what attorney he should interview and employ to fix up some papers for him. Mr. Wardlaw testified in the case that Jesse Mingo did seek his advice as to what attorney to employ and the will was prepared by this attorney and on the next day the same was executed in the presence of the attorney, Joe N. Pigott, Mrs. Doris Cleo McLain and Mrs. Tena M. Carr who signed the will as subscribing witnesses thereto. They both testified that Jesse Mingo appeared to be above the average in intelligence, a person fully acquainted with the value and extent of his property and where it was located; he knew of what his property consisted, who his relatives were, including the sisters who had died and fully understood which members of his family were still living

as the natural objects of his bounty. In his will the testator provided that all of his property should go to William Monroe Mingo and Isadore Mingo or to the survivor of them in the event either of them predeceased him.

The proof disclosed that William Monroe Mingo died about a year later, leaving Isadore as the sole surviving brother of the testator and the sole beneficiary under the will.

The proof further disclosed that about a year after the execution of the will, the testator returned to the office of his attorney in McComb, got the will and took it away with him and it remained in the possession of the testator until September 4, 1960, the date of his death.

This contest of the will, filed by the nephews and nieces of the testator, alleged as grounds for the contest first, that the testator was without the necessary testamentary capacity to execute a valid will and second, the contestants relied upon the presumption that where there is a confidential relationship existing between the testator and the beneficiary in the will that undue influence is presumed, in the absence of proof to the contrary. The record before us is wholly barren of any proof of a lack of testamentary capacity, and the proof affirmatively discloses a total absence of any undue influence being exerted upon the testator in connection with the execution of the will.

Moreover, the will was probated in common form when the chancery clerk, Mr. Roy Ellzey, the attorney, Joe N. Pigott, Mrs. Doris Cleo McLain, Mr. J. H. Wardlaw and several others were used as witnesses and most of whom testified as to the want of undue influence in connection with the execution of the will, and there was no testimony to the contrary.

Section 507, Code of 1942, Rec., provides: ''On the trial of an issue made up to determine the validity of

a will which has been duly admitted to probate, such probate shall be prima facie evidence of the validity of the will.''

As to the cases of Croft v. Alder, 237 Miss. 713, 115 So. 2d 683 and Ham v. Ham, 146 Miss. 161, 110 So. 583, we think that the factual situation involved in those cases readily distinguish the same from the case at bar.

The appellants on this appeal contend that there was a confidential relationship existing between the testator and his brother, Isadore Mingo, and they rely somewhat on the fact that the testator executed a power of attorney 4 months after the execution of the will and that this power of attorney authorized Isadore Mingo to look after the property of the testator in Chicago, Illinois, but the appellants introduced as an adverse witness Isadore Mingo and he explained that while he had made some trips to Chicago for the testator he had a pass on the railroad, being an employee of the railroad company, and that he merely went to Chicago to look at the property of the testator and to check over the account at the real estate office where the monthly rents were collected by a real estate firm as agent for the testator; that this real estate firm remitted the rent every month to the testator and the proof further disclosed that Isadore Mingo did not even know whether Jesse had a bank account or where it was kept, or what he did with the money that he collected each month for rent. In other words, except for executing the power of attorney hereinbefore mentioned, there was no proof that Isadore Mingo assisted the testator in any manner in the management of his affairs. Then too, the proof showed without conflict that Isadore Mingo was not even present at the time the will was executed and that while his brother Jesse had said to him that he wanted to write a will and wanted to know what attorney to see that Isadore merely stated to him that ''I will ask my boss man (meaning Mr. Wardlaw) and get him to

recommend someone'', which was done, according to the testimony of Mr. Wardlaw and of Isadore.

Finally the appellants make the point that the chancellor made no finding on the question of undue influence. However the chancellor did say in a finding of fact the following: The proponents have proven by two of the witnesses at the time he made the will that he was competent to make a will on that day, and nobody said anything to the contrary regardless of what his general health might have been, either before or after that time. He was according to this testimony mentally competent, and under no disabilities, infirmities or anything else that would prohibit him from making a good will.''

 █ We think that the appellants failed to establish either of the grounds relied upon in their contest of this will and that the action of the chancellor in dismissing the contest was amply supported by the evidence and that the decree dismissing the contest should be, and the same is, hereby affirmed.

Affirmed.

*Kyle, Ethridge, Gillespie and McElroy, JJ.,* concur.