939 So.2d 861 (2006)
In the Matter of the ESTATE OF Samuel B. MINOR, Deceased.
Tony Trask and Ethel Young, Appellants
v.
Halla Minor, Jr., Executor of the Last Will and Testament of Samuel B. Minor, Appellee.
No. 2005-CA-00442-COA.
Court of Appeals of Mississippi.
October 10, 2006.
*863 David S. Crawford, Ron Senko, Woodville, attorneys for appellants.
Holmes Sturgeon, attorney for appellee.
Before LEE, P.J., CHANDLER, GRIFFIS, and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Tony Trask and Ethel Young filed a petition to establish paternity and to contest the Last Will and Testament of Samuel B. Minor. They alleged the will was void due to Halla Minor, Jr.'s undue influence. The chancellor upheld the will. Trask and Young appeal and argue the chancellor erred (1) in his evaluation of the evidence, (2) in his analysis of the evidence, (3) in his application of the evidence, and (4) in his determination that Minor overcame the presumption of undue influence. We find no error and affirm.

FACTS
¶ 2. Samuel Minor ("Judge Minor") owned 100 acres of land in Wilkinson County, Mississippi. He was a farmer, deacon, local historian, and former justice of the peace. His wife predeceased him, and he had no children.
¶ 3. In 1994, Judge Minor executed his first will. He divided his land among Trask, Halla, Young, and eight others. Judge Minor's personal property was divided among Halla, Young, and five others. Halla was left the most land, including Judge Minor's house, as well as the most personal property.
¶ 4. In the mid-eighties, Judge Minor was involved in a car accident. At his request, nephew Halla moved in, took care of him, and helped on the farm. Judge Minor offered to pay Halla in exchange for these services, but he told Judge Minor there was no need. In 2000, Judge Minor was involved in another car accident. As a result, he was confined to a wheelchair. He was eventually dependent on Halla for transportation, cleaning, bathing, dressing, etc. Halla's mother Beatrice provided meals. Because Judge Minor's disability made it difficult to get inside the bank, he added Halla as a signatory on his checking account. Judge Minor also gave Halla a copy of the key to his safety deposit box.
¶ 5. In June of 2001, Judge Minor attempted to call his attorney several times regarding his will and land survey. The survey suggested Judge Minor owned seventy acres. He was concerned, because he had willed away 100 acres. Late that month, he had Halla drive him to the grocery store. Halla went inside, and Judge Minor stayed in the truck. Judge Minor spotted his attorney Alonzo Sturgeon and told Sturgeon that he had researched durable powers of attorney. Judge Minor directed Sturgeon to give his durable power of attorney to Halla. Judge Minor also directed Sturgeon to change the 1994 will. Judge Minor wanted all his land to be kept in the Minor family name. He also wanted to give it to Halla in appreciation of the fact that Halla had *864 taken care of him. He met once more with Sturgeon about the changes he wanted. Halla drove him this time also and went across the street to a service station while Judge Minor and Sturgeon discussed the will.
¶ 6. On July 9, Halla took Judge Minor to the doctor for his monthly check up. While he was there he was also screened for a nursing home, on the advice of Judge Minor's home health nurse. She advised him that he could be placed in a nursing home in the event that Halla had to be away on weekends. Judge Minor was never placed in a nursing home.
¶ 7. Judge Minor executed his new will at his home on July 11. He bequeathed $500 apiece to Samuel Booker T. Shepard, J.T. Shepard, Nemiah Smith, Trask, and Young. He bequeathed the remaining funds in his checking account to Halla and Young. All else was left to Halla. Halla was outside working in the field during this time. His fiancee, Shirley McPipe was in the house but excused herself from the room. After the will was signed, Judge Minor instructed Halla to pay the attorney's bill. Halla did so with a check from Judge Minor's checkbook.
¶ 8. The following October, Judge Minor died.

STANDARD OF REVIEW
¶ 9. Undue influence is a question of fact. Watkins v. Watkins, 142 Miss. 210, 229, 106 So. 753, 755 (1926). A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. Sanderson v. Sanderson, 824 So.2d 623, 625(¶ 8) (Miss.2002). This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. at 625-26(¶ 8). Legal questions are reviewed de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002).

ANALYSIS
¶ 10. Although Trask and Young list four issues, all the issues go to whether Halla overcame the presumption of undue influence. Trask and Young argue that Halla did not meet the clear and convincing burden of proof, because their evidence was more credible. They also question the sufficiency of Halla's evidence. Halla responds he provided sufficient evidence to overcome the presumption of undue influence.
¶ 11. A will secured through undue influence is not valid. Madden v. Rhodes, 626 So.2d 608, 623 (Miss.1993). A presumption of undue influence arises when there is a confidential relationship, and the fiduciary took some active part in getting the will written. Croft v. Alder, 237 Miss. 713, 722-23, 115 So.2d 683, 686 (1959).
¶ 12. Once the presumption is established, the burden shifts to the fiduciary to rebut the presumption by clear and convincing evidence. Id. In order for Halla to overcome the presumption, he must show (1) that he exhibited good faith in the fiduciary relationship with Judge Minor; (2) Judge Minor acted with knowledge and deliberation when he executed his will, and (3) Judge Minor exhibited independent consent and action. Rogers v. Pleasant, 729 So.2d 192, 193(¶ 7) (Miss.1998).
¶ 13. First, we consider whether there was substantial credible evidence that Halla acted in good faith. To determine this element, we must examine five factors: (1) who sought the preparation of the will, (2) where and in whose presence was the will executed, (3) what was the fee that was paid to execute the will, (4) who paid the *865 fee, and (5) was the will executed openly or secretly. Id. at 194 (¶¶ 8-11). Halla testified that it was Judge Minor's idea to visit the attorney, and Halla did not know why. There was testimony that Judge Minor had called Sturgeon several times during the month of June 2001. Mr. Sturgeon testified it was Judge Minor who approached him about drafting his will. The will was executed at Judge Minor's home in the presence of Mrs. Sturgeon, Edward and Sedonia Anthony, and Cora Sherman. Mrs. Sturgeon and Judge Minor went over the contents of the will alone in the kitchen. The will was signed in the living room in the presence of Mrs. Sturgeon, the Anthonys, and Sherman. Halla was outside working, and his fiancee was neither in the kitchen nor living room. The fees for the will and power of attorney were paid together at $327. Judge Minor paid the fees. The will execution was quite open, as it was in the middle of the day, in Judge Minor's living room, in front of three witnesses, none of whom were beneficiaries. We find there was substantial credible evidence to support the chancellor's finding that Halla acted in good faith.
¶ 14. Next, we look at whether Judge Minor acted with knowledge and deliberation when the will was executed. We must consider four factors: (1) Judge Minor's awareness of his total assets and their general value, (2) an understanding by Judge Minor of the persons who would be the natural inheritors of his bounty under the laws of intestacy or under a prior will and how the proposed change would legally effect the prior will or natural distribution, (3) whether non-relative beneficiaries would be excluded or included, and (4) knowledge of who controls Judge Minor's finances and business and by what method, and if controlled by another, how dependent was Judge Minor on him and how susceptible to his influence. Id. at 194(¶ 13).
¶ 15. When discussing the changes to the will, Mr. Sturgeon questioned Judge Minor about his assets. They discussed the survey that showed Judge Minor only owned seventy acres. He was aware that this was different than his understanding that he always had 100 acres. Mr. Sturgeon testified that Judge Minor knew he owned a main house and a smaller house. He was aware of his LTD automobile, but felt that since it was not running, it would not be worth what it would cost any beneficiary to fix. Judge Minor accurately recounted that he had $2,500 in his bedroom. He knew of his checking account at Commercial Bank. He correctly believed he did not have any money left over in the Masonic Relief Fund. He did not know if he ever had any in the State Retirement System. He instructed Mr. Sturgeon to check on both these funds. Trask testified that Judge Minor was aware of the timber on his land and its value. Finally, Halla testified that Judge Minor was aware that Young was stealing items of personal property out of his house. There was a question about whether he knew he still had a cow.
¶ 16. Sturgeon and Celeste Holland testified that Judge Minor understood that his 1994 will divided up the land among related and non-related parties. He now wanted the land kept intact and given to a Minor. He also wanted the land given to a person who was going to stay on it and use it. He knew Halla was a likely candidate, because he stayed and helped on the farm for many years. Judge Minor understood the new will was disinheriting several people out of land. He provided for five of those people to be given cash. Mr. Sturgeon suggested he just do a deed to Halla and reserve a life estate in himself. Judge *866 Minor said no, he wanted a will recorded in the Chancery Court's will book.
¶ 17. The same non-relative beneficiaries, inter alia Trask and Young, who had been included in the first will were included in the second will. However, these beneficiaries were given smaller inheritances in favor of Judge Minor's nephew Halla.
¶ 18. Finally, the testimony was that Judge Minor was in charge of his finances and business. Halla served as his "legs." There was testimony from several witnesses that Judge Minor was in charge, and Halla only did "what the Judge sa[id] do." Judge Minor made the decision to have Halla added as a signatory on his account. Halla never exercised this power unless instructed by Judge Minor. It was Judge Minor's decision to give Halla an extra key to his safety deposit box. Halla only opened the safety deposit box once and that was at Judge Minor's instruction. It was Judge Minor's decision to give Halla power of attorney. Halla never acted on his power of attorney. The only financial decision he was able to talk Judge Minor into was to buy a certificate of deposit on which the Judge drew interest. Halla deposited Judge Minor's Social Security checks into the Judge's account. Judge Minor exclusively handled his landlord-tenant relationship with hunters who leased the smaller house on his land. Judge Minor handled his own land survey and will drafting. There was substantial credible evidence to support the chancellor's finding that Judge Minor acted with knowledge and deliberation when the will was executed.
¶ 19. The final element we must examine is whether Judge Minor exhibited independent consent and action. Several witnesses testified that Judge Minor was an intelligent, sharp and strong-willed individual, and this never changed despite his age. Judge Minor initiated the new will, without telling Halla. Although Halla drove his ninety-seven-year-old uncle to the lawyer's office, he did not know the purpose of the visit and excused himself from all three discussions about the will.
¶ 20. Holland testified that Judge Minor had previously confided in her, outside of Halla's presence, that he wanted all the land to go to Halla. Mrs. Sturgeon read the will paragraph-by-paragraph to Judge Minor. At the end of each he replied, "That's what I want." Mrs. Sturgeon then testified that she had Judge Minor read the will. Mr. Anthony testified that he overheard Judge Minor tell Mrs. Sturgeon that the will was what he wanted. Sherman testified that when Mrs. Sturgeon and Judge Minor returned from reading the will in the kitchen, Judge Minor remarked, "I always read what I sign." He then signed the will. All the witnesses to the will execution testified Judge Minor was in good spirits. Jessie Stewart testified that he visited Judge Minor later that same day. Outside of Halla's presence, Judge Minor told Stewart that he was happy, because he had just executed his will. The supreme court has affirmed a finding of independent consent and action where the fiduciary was ignorant of the new will and the testator was strong-willed. Id. at 194-95(¶ 18). That being the case here, we likewise affirm the finding of independent consent and action.
¶ 21. In sum, there was substantial credible evidence to support the chancellor's finding that Halla overcame the presumption of undue influence by clear and convincing evidence.
¶ 22. Nevertheless, Trask and Young insist that there was conflicting evidence, so Halla cannot be said to have borne his burden of proof. That evidence is in conflict means only that there is a triable issue. It does not prevent a trier of fact *867 from assessing whether one side has proven its case by clear and convincing evidence. See, e.g., Bacot v. Duby, 724 So.2d 410, 419(¶ 44) (Miss.Ct.App.1998) (holding that whether adverse possession was proven by clear and convincing evidence is a factual determination made by the chancellor).
¶ 23. Trask and Young next urge that whether facts were proven by clear and convincing evidence is a question of law, and therefore we must conduct a de novo review of the evidence. To support this contention they cite In re Will of Carney, 758 So.2d 1017 (Miss.2000), and In re Estate of Homburg, 697 So.2d 1154 (Miss. 1997). Both of these cases say that application of the rules of construction and interpreting the testator's intent are questions of law. Carney, 758 So.2d at 1019(¶ 8); Homburg, 697 So.2d at 1157 (¶¶ 10-11). These cases do not say that whether a burden of proof is met is a question of law. Indeed, it is one of fact.
¶ 24. Finally, Trask and Young maintain that Halla did not sustain his burden of proof, because their witnesses were more credible. The chancellor found Halla to be a credible witness. In assessing conflicting evidence, the chancellor, sitting as the trier of fact, retains the sole authority to determine the credibility of the witnesses. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss. 1987). We give deference to the chancellor's credibility findings since he is the only one who hears the testimony and observes the demeanor of witnesses. In re Estate of Carter, 912 So.2d 138, 143(¶ 18) (Miss.2005). He is in the best position to judge their credibility, and it is not this Court's province to undermine the chancellor's authority by replacing his judgment with our own. Id.
¶ 25. We affirm the chancellor's finding that the Last Will and Testament of Samuel B. Minor, dated July 11, 2001, was not the product of undue influence.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF WILKINSON COUNTY IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.