948 So.2d 455 (2007)
In the Matter of the LAST WILL AND TESTAMENT OF George W. CARTER, Deceased.
Lloyd W. Carter, Appellant,
v.
Ruth Moody, Executrix, Appellee.
No. 2005-CA-01326-COA.
Court of Appeals of Mississippi.
January 30, 2007.
Garland D. Upton, Attorney for Appellant.
William C. Callender, Columbia, Attorney for Appellee.
Before MYERS, P.J., GRIFFIS, and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Lloyd W. Carter appeals the decision of the Chancery Court of Marion County dismissing his will contest. Lloyd contested the probate of the last will and testament of George W. Carter, Lloyd's father, contending that Carter lacked testamentary capacity at the time of execution because of "senile dementia and advanced age" and that the execution was a product of undue influence by Ruth Moody, the primary beneficiary under Carter's will. The chancellor held that there was insufficient proof that Carter lacked the requisite mental capacity to make the will and insufficient proof that the will was the product of undue influence. Accordingly, the chancellor denied and dismissed Lloyd's will contest. Aggrieved, Lloyd perfected this appeal, asserting that a confidential relationship existed between Ruth and Carter which gave rise to a presumption of undue influence, and that Ruth failed to rebut the presumption.[1] We agree with the chancellor and, therefore, affirm.

*456 FACTS AND PROCEDURAL HISTORY
¶ 2. On July 23, 2002, George W. Carter executed his last will and testament. Under the provisions of this will, his wife, Eugenia S. Carter, would take a life estate in all property owned by Carter at the time of his death, with the remainder devised and bequeathed to Ruth Moody. Furthermore, Carter's will provided that his entire estate would pass to Ruth in the event that Ruth survived both Carter and his wife, Eugenia. Ruth was identified in the 2002 will as Carter's friend "who has faithfully served my wife and me during extended illnesses for many years. . . ." Lloyd W. Carter, Carter's son, was nowhere mentioned in the will.
¶ 3. Carter's wife, Eugenia, died on September 11, 2002, less than two months after Carter's will was executed. Carter died on September 10, 2004, and Ruth, serving as executrix as provided under the will, subsequently petitioned the Marion County Chancery Court for letters testamentary and for probate of Carter's last will and testament. The chancellor promptly granted Ruth's petition for letters testamentary and admitted Carter's will for probate. Shortly thereafter, Lloyd W. Carter filed his "Answer and Contest of the Last Will and Testament of George W. Carter, Deceased," alleging that Carter "lacked testamentary capacity because of senile dementia and advanced age." Lloyd further alleged in his contest that Ruth, as sole beneficiary under the terms of the will, "exerted undue influence upon [Carter]."
¶ 4. At trial on the merits of Lloyd's will contest, Ruth testified that she had been employed by Carter for approximately twenty-two years prior to his death. According to Ruth, her duties included: housekeeping, grocery shopping, driving the aging couple for doctor's visits, sitting with Eugenia during her confinement in the hospital, sitting with Carter during his confinement in the hospital, and paying bills on Carter's behalf. Ruth further testified that "[she] was doing everything" for Carter and Eugenia at a point in time after Eugenia became seriously ill but prior to her death.[2] In addition to meeting Carter's physical and health needs, Ruth also attended to Carter's financial affairs. According to Ruth, Carter granted her power of attorney "so he wouldn't have to go into the nursing home." To that end, Ruth was granted authority to draft checks and conduct other business on Carter's behalf. However, Ruth testified that Carter always remained in control of his finances and strictly scrutinized all transactions conducted on his behalf.
¶ 5. Regarding execution of Carter's will, Ruth testified that she did not participate in procuring or executing the will. In fact, Ruth testified that she was not even aware that Carter had executed the 2002 will. Delana Broom, an employee of the attorney who drafted and assisted Carter in his execution of the will, also testified that Ruth did not participate in any way with the procurement or execution of the will.
*457 Also, according to Broom, the will was executed behind closed doors and Ruth was in a separate room at the time of execution. Furthermore, Broom testified that Carter was fully informed about the provisions of the will prior to his signing it. While Broom's testimony implicated Ruth as having paid for the preparation of the will as well as for preparation of the power of attorney, Broom further explained that the payment was made at Carter's direction by check drawn on his account.
¶ 6. There was further testimony at the trial by Beverly Branch, an officer of Citizen's Bank who was present during execution of a deed of trust by Carter in favor of the bank, and by Vicky Stringer, a legal assistant to an attorney who prepared four promissory notes executed on a different occasion by Carter. Stringer delivered the four instruments to Carter at his home and notarized the documents after witnessing Carter's signature. Neither Branch's testimony nor that of Stringer shed any doubt on the mental competency of Carter. In fact, both witnesses testified that they would not have participated in the execution of the respective documents if they had doubted Carter's competency.
¶ 7. At the conclusion of all testimony, the chancellor issued a bench ruling denying and dismissing Lloyd's contest to the last will and testament of his father, George W. Carter. Lloyd does not challenge the chancellor's finding that the evidence did not establish "that George W. Carter lacked the requisite mental capacity" to execute his last will and testament on July 23, 2002. We agree with Lloyd insofar as his lack of argument indicates agreement with the chancellor on this point, as the record is completely devoid of evidence to support Lloyd's initial claim that Carter "lacked testamentary capacity because of senile dementia and advanced age." Instead, Lloyd insists on appeal that a presumption of undue influence arose by virtue of the confidential relationship between Ruth and Carter. Lloyd further contends that Ruth failed to rebut this presumption. We disagree with Lloyd in the first instance and therefore find his second contention inapposite.

STANDARD OF REVIEW
¶ 8. On review, a chancellor's findings of fact will not be disturbed unless those findings are manifestly wrong, clearly erroneous, or based upon an erroneous legal standard. In re Estate of Grantham, 609 So.2d 1220, 1223 (Miss.1993). Accordingly, we will not reverse if the chancellor's findings are supported by substantial, credible evidence. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989).

DISCUSSION
¶ 9. Lloyd asserts on appeal that a confidential relationship existed between Ruth Moody and George W. Carter. Further, Lloyd contends that Ruth failed to rebut the presumption of undue influence that arose by virtue of the confidential relationship between Carter, as testator, and Ruth, as beneficiary. Even assuming, without deciding, that a confidential relationship existed between Carter and Ruth, we nevertheless find that the presumption of undue influence did not arise. According to the Mississippi Supreme Court:
[W]here a confidential relation exists between a testator and a beneficiary under his will, and the beneficiary has been actively concerned in some way with the preparation or execution of it, the law raises a presumption that the beneficiary has exercised undue influence over the testator, and casts upon the beneficiary the burden of disproving undue influence by clear and convincing evidence.
*458 Croft v. Alder, 237 Miss. 713, 722-23, 115 So.2d 683, 686 (1959) (emphasis added). The court in Croft discussed at some length the difference between the presumption of undue influence as it may arise in the context of inter vivos gifts, and the presumption as it may arise in the context of a testamentary gift by will.
¶ 10. According to the court in Croft, inter vivos gifts such as deeds may be deemed presumptively void merely by a finding that a confidential relationship existed between the donor and donee. Id. at 726, 115 So.2d at 688. The burden then shifts to the donee to rebut the presumption by clear and convincing evidence. Id. This rule, however, "is not applicable in that limited sense to bequests or devises made by will." Id. In the context of devises and bequests by will, there is an additional requirement that "the beneficiary in the confidential relation has been actively concerned in some way with the preparation or execution of the will. . . ." Id. Stated differently, "the existence of a confidential or fiduciary relationship, coupled with a showing of `suspicious circumstances' such as the fact that a beneficiary or person who benefits by the will took part in the execution or preparation of the will, gives rise to a presumption of undue influence." Estate of Lawler v. Weston, 451 So.2d 739, 741 (Miss.1984) (citing Croft, 237 Miss. at 723, 115 So.2d at 686). We find no such "suspicious circumstances" in the case sub judice.
¶ 11. During trial in the instant case, the only evidence regarding the execution of the will at issue was the testimony of Ruth Moody, executrix and primary beneficiary under the will, and that of Delana Broom, an employee of the attorney who prepared the will and assisted Carter in its execution. Ruth's testimony was that she was not aware that Carter was executing a will and that she was not present during the execution. Ruth further testified that she did not request the preparation of the will in question nor otherwise aid in its execution. Broom's testimony fully corroborated the testimony of Ruth. Broom testified that Ruth did not call or make any type of request regarding preparation of Carter's will. Furthermore, according to Broom, Ruth was present at Carter's home during the execution of the will, but Broom testified that the execution took place behind closed doors and that Ruth was in the kitchen during the execution of the will.
¶ 12. The only circumstance surrounding the execution of Carter's will that even hints of activity on Ruth's part was the fact that Ruth paid the attorney for his services after the execution. This fact, however, loses any hint of suspicion in light of the fact that Ruth paid by a check drawn on Carter's checking account and at the direction of Carter. Ruth routinely made payments on Carter's behalfby check and otherwise. There is no indication in the record that Ruth's payment on this occasion was out of the ordinary or otherwise suspicious. We cannot say that the chancellor was manifestly wrong or committed clear error in his finding that "[t]here [was] nothing to show that any person other than George W. Carter initiated or directed or procured the preparation of the last will and testament as well as the power of attorney." Without any evidence of involvement by Ruth Moody or other "suspicious circumstances" surrounding the procurement, preparation, or execution of Carter's July 2002 will, the chancellor's finding of no undue influence was clearly supported by substantial evidence. Accordingly, even if we are persuaded that a confidential relationship existed between Ruth and Carter, the presumption of undue influence never arose in this case and Ruth was not obligated to rebut *459 the presumption. Therefore, both of Lloyd's assignments of error are without merit and the ruling of the chancellor is affirmed.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF MARION COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] Lloyd's appellate brief does not address the chancellor's holding regarding Carter's alleged lack of mental capacity at the time of execution. Therefore, we will address only the chancellor's holding with respect to whether Carter's will was a product of undue influence, as this is the only issue for which Lloyd included arguments and authority.
[2] According to Ruth's testimony, Carter did not become bedridden until after Eugenia's death on September 11, 2002. The will at issue was executed on July 23, 2002. Although the testimony reflects that even on this date, Carter was largely dependant on Ruth for his and his wife's care, he did not become completely dependant upon Ruth's care until after Eugenia's death, and consequently, after execution of his 2002 will.